**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| KEITH SMITH, RIA MCDOUGAL, JOHN LEWIS, VERNETTA DUCKWORTH, JANISE PAGE, JACQUES WALKER, SHU-RA ROGERS, TODD LINDBERG, ANTHONY BROWN, JASON READUS, DWIGHT BROWN, ROBERT JACKSON, BILLY BROWN, CRYSTAL BARBEE, MARKESHA HUDSON, ANTHONY BARLOW, LARRY POSEY, DAJAUNA YOUNG, on behalf of themselves and a class of similarly situated African American employees, | ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 03 CV 9110  Judge Milton I. Shadur |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| NIKE RETAIL SERVICES, INC., | ) ) | |
| Defendant. | ) | |

## ORDER ON DISMISSAL

The Parties to this Litigation have agreed that this action should be finally resolved by entry of a Settlement Agreement and Consent Decree ("Consent Decree"). The Consent Decree shall not constitute, and is not, an adjudication and/or finding on the merits of the case. The Consent Decree finally resolves all of the claims in the litigation now pending between the Parties.

NOW THEREFORE, the Court having examined the terms and provisions of the Consent Decree,

IT IS HEREBY ORDERED as follows:

1

1.   All terms used herein shall have the same meaning as defined in the Consent Decree.

2.   This Court has jurisdiction over the subject matter of this litigation and over all Parties to this litigation, including all Settlement Class Members.

3.   The Consent Decree in the above matter, a copy of which is attached hereto at Tab A, is reasonable and appropriate, is in the best interests of the Parties and the Class, and is in the interest of justice.

4.   The terms of the Consent Decree hereby are incorporated herein as if fully set forth herein.

5.   The Consent Decree and this Order shall remain in effect for a period of two (2) years from the Effective Date of the Consent Decree.

6.   Neither the Consent Decree nor this Order nor any communication or action by the Parties in connection with the settlement shall be deemed to constitute either an admission by Nike of any liability or wrongdoing or a finding by the Court as to the merits of any claim or defense asserted or that could have been asserted in this action.

7.   Neither the Consent Decree nor this Order nor any communication or action by the Parties in connection with the settlement shall be deemed to constitute an admission in any action or proceeding or offered or received in evidence in any action or proceeding of any fault, liability, violation of statute, or wrongdoing by any person or entity.

8.   By virtue and operation of the consideration contained in the Consent Decree, all Settlement Class Members are conclusively deemed to have fully, finally, and irrevocably waived, released, and discharged Nike from any and all claims as set forth and defined in Paragraph 4.2 of the Consent Decree. All Settlement Class Members shall

2

be enjoined fully, finally, and irrevocably from commencing, prosecuting, or maintaining any race discrimination or harassment claim against Nike as set forth and defined in Paragraph 4.2 of the Consent Decree. Any such Settlement Class Member shall be further enjoined fully, finally, and irrevocably from commencing, prosecuting, or maintaining in any court or forum any claim or action, or other proceeding that challenges or seeks review of or relief from any order, judgment, act, decision, or ruling of the Court in connection with this action.

9.     Within seventy-two (72) hours following Final Approval of this Decree, Nike shall pay by wire transfer to the Seaway National Bank of Chicago (pursuant to transfer instructions to be provided by Class Counsel after execution of this Decree by all Parties) the sum of Seven Million Six Hundred Thousand Dollars ($7,600,000.00) (the "Settlement Fund"). The Settlement Fund shall be an irrevocable trust under Illinois law and a Qualified Settlement Fund under Section 468B of the Internal Revenue Code.

10.    Class Counsel's Unopposed Petition for Attorneys' Fees and Costs is granted in its entirety.

11.    Pursuant to Paragraph 9.6 of the Consent Decree, the Court selects and appoints James E. Coleman, Jr., Professor of Law at Duke University School of law as the independent Diversity Consultant to be responsible for monitoring the Consent Decree.

12.    This case is dismissed, with prejudice and without costs to the Parties, except as otherwise expressly provided for in this Order and the Consent Decree, including, but not limited to, this Court's retention of jurisdiction to administer, effectuate, and enforce the provisions of the Consent Decree.

SO ORDERED:

Milton I. Shadur

United States District Judge

Dated:  October 2, 2007

Exhibit
A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KEITH SMITH, RIA MCDOUGAL, JOHN LEWIS, VERNETTA DUCKWORTH, JANISE PAGE, JACQUES WALKER, SHU-RA ROGERS, TODD LINDBERG, ANTHONY BROWN, JASON READUS, DWIGHT BROWN, ROBERT JACKSON, BILLY BROWN, CRYSTAL BARBEE, MARQUISHA HUDSON, ANTHONY BARLOW, LARRY POSEY, DAJAUNA YOUNG, on behalf of themselves and a class of similarly situated African-American employees, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| | No. 03 C 9110 |
| | Judge Shadur |
| | Magistrate Judge Denlow |
| Plaintiffs, | )<br>) |
| v. | )<br>) |
| NIKE RETAIL SERVICES, INC., | )<br>) |
| Defendant. | ) |

**SETTLEMENT AGREEMENT AND CONSENT DECREE**

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................1

II.     DEFINITIONS.......................................................................................................3
        2.1.    "Best Efforts"................................................................................................3
        2.2.    "Claimant"......................................................................................................3
        2.3.    "Claim Form".................................................................................................3
        2.4.    "Claim Reviewer"..........................................................................................3
        2.5.    "Class" and/or "Plaintiff Class".....................................................................3
        2.6.    "Class Counsel".............................................................................................4
        2.7.    "Class Member".............................................................................................4
        2.8.    "Compliance Officer".....................................................................................4
        2.9.    "Consent Decree" or "Decree" ......................................................................4
        2.10.   "Counsel of Record".......................................................................................5
        2.11.   "Court"............................................................................................................5
        2.12.   "Diversity Consultant"...................................................................................5
        2.13.   "Effective Date".............................................................................................5
        2.14.   "Eligible Claim".............................................................................................5
        2.15.   "Eligible Claimant" and/or "Eligible Class Member" ...................................5
        2.16.   "Final Approval"............................................................................................6
        2.17.   "Liability Period"...........................................................................................6
        2.18.   The "Litigation" and/or This "Case" ............................................................6
        2.19.   "Named Plaintiffs".........................................................................................6
        2.20.   "Nike"............................................................................................................6
        2.21.   "Niketown Chicago" or "NTC"......................................................................6
        2.22.   "Parties".........................................................................................................6
        2.23.   "Preliminary Approval" .................................................................................6
        2.24.   "Settlement"...................................................................................................7
        2.25.   "Settlement Class Member"............................................................................7
        2.26.   "Settlement Administrator" ............................................................................7
        2.27.   "Service".........................................................................................................7

III.    FINDINGS.............................................................................................................7

IV.     GOALS AND GENERAL PROVISIONS OF THE SETTLEMENT
        AGREEMENT AND CONSENT DECREE ........................................................7
        4.1.    Goals Of The Consent Decree and Settlement Agreement...........................7
        4.2.    Release...........................................................................................................8
        4.3.    Covenant Not to Sue .....................................................................................9
        4.4.    No Admission Of Liability ............................................................................9
        4.5.    No Court Findings As To Liability...............................................................10
        4.6.    Not Admissible In Any Other Proceeding.....................................................10
        4.7.    Failure to Obtain Final Approval Of Consent Decree ...........................11

V.      JURISDICTION ..................................................................................................11

i

VI.   EFFECTIVE DATE AND DURATION OF THE CONSENT DECREE ........................11
      6.1.   Effect Of Consent Decree .................................................................................11
      6.2.   Joint Request For A Court Order .......................................................................12
      6.3.   Effective Date ...................................................................................................12
      6.4.   Expiration Date .................................................................................................12

VII.  SCOPE OF THE CONSENT DECREE ........................................................................12
      7.1.   Scope Of The Consent Decree ...........................................................................12
      7.2.   Persons Covered.................................................................................................12
      7.3.   On-Going Best Efforts To Ensure The Effectuation Of The Settlement..............13

VIII. RECOGNITION OF RETAINED MANAGERIAL DISCRETION ...............................13
      8.1.   Overall Management Discretion Over The Workplace And Workforce ...............13
      8.2.   Managerial Discretion Over Human Resource Functions ......................................13
      8.3.   No Requirement To Violate Any Law .................................................................13

IX.   EQUITABLE RELIEF...................................................................................................13
      9.1.   No Automatic Injunction ...................................................................................13
      9.2.   Compliance Officer at World Headquarters and Ombudsperson at
             Niketown Chicago..............................................................................................14
      9.3.   Duties of Compliance Officer.............................................................................14
      9.4.   Duties of Ombudsperson.....................................................................................15
      9.5.   EEO and Diversity Training ...............................................................................15
      9.6.   Court-Appointed Diversity Consultant................................................................16
      9.7.   Access to Information .........................................................................................17
      9.8.   Reporting and Monitoring Function ....................................................................17
      9.9.   Specific Programmatic Relief .............................................................................18
      9.10.  Additional Affirmative Relief.............................................................................22
      9.11.  Community Outreach..........................................................................................24

X.    MONETARY RELIEF ..................................................................................................25
      10.1.  Settlement Fund .................................................................................................25
      10.2.  Creation and Administration of Settlement Fund .................................................26
      10.3.  Claims Filing Procedures for Settlement of Claims of Class Members and
             Named Plaintiffs ................................................................................................27
      10.4.  Distribution Formula..........................................................................................28
      10.5.  Tax Treatment....................................................................................................29
      10.6.  Indemnification by Settlement Class Members and Named Plaintiffs ..................30
      10.7.  Nike Has No Tax Obligation, Liability or Responsibility ....................................30

XI.   ATTORNEYS' FEES AND COSTS ..............................................................................31
      11.1.  Attorneys' Fees And Costs .................................................................................31
      11.2.  Release of Any Claims for Attorney's Fees and Costs..........................................31
      11.3.  Cost of Employment Practices.............................................................................31
      11.4.  Attorneys' Fees and Costs of Enforcing the Consent Decree..................................31

ii

XII.   PRELIMINARY APPROVAL HEARING ....................................................................32

XIII.  PRELIMINARY NOTICE, OBJECTIONS, AND OPT-OUTS........................................33

XIV.  FAIRNESS HEARING AND FINAL NOTICE................................................................34

XV.   EXCESSIVE NUMBER OF OPT-OUTS ........................................................................35

XVI.  ENFORCEMENT PROCEDURE ....................................................................................35
      16.1.  Resolution Of Parties' Disputes..........................................................................35
      16.2.  Court Intervention................................................................................................35
      16.3.  No Third-Party Rights..........................................................................................36
      16.4.  Status of Allegedly Injured Individuals ...............................................................36
      16.5.  No Individual or Independent Right to Seek Enforcement....................................36

XVII.  CONSTRUCTION..........................................................................................................37
      17.1.  Governing Law ....................................................................................................37
      17.2.  Entire Agreement ................................................................................................37
      17.3.  Severability .........................................................................................................37
      17.4.  Joint Document Of The Parties.............................................................................37
      17.5.  Agreed Modifications ..........................................................................................38
      17.6.  Headings .............................................................................................................38
      17.7.  Non-Waiver..........................................................................................................38
      17.8.  Calculation Of Time ...........................................................................................38
      17.9.  Notice To The Parties ..........................................................................................38
      17.10. Counterpart s.......................................................................................................39

XVIII. PUBLICITY...................................................................................................................39
      18.1.  General................................................................................................................39
      18.2.  Publicity .............................................................................................................39
      18.3.  Breach of Publicity Promise ................................................................................40

XIX.  VOLUNTARY DISMISSAL WITH PREJUDICE ...........................................................41

EXHIBIT A – PRELIMINARY APPROVAL ORDER

EXHIBIT B – PRELIMINARY NOTICE

EXHIBIT C – REQUEST FOR OPT-OUT STATEMENT

EXHIBIT D – NOTICE OF FINAL APPROVAL OF CONSENT DECREE

EXHIBIT E - ORDER ON DISMISSAL

EXHIBIT F – JOINT PUBLICITY STATEMENT

## I.   INTRODUCTION

In *Smith, et al., v. Nike Retail Services, Inc.*, 03 C 9110 (the "Litigation"), the Named Plaintiffs, on behalf of a class of African-American employees, brought suit alleging, among other things, that Nike violated the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981") and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), by discriminating against and creating a hostile work environment for African-American employees at the Niketown Chicago ("NTC") store since December 17, 1999.

Nike denied, and continues to deny, all allegations of wrongdoing and liability in the Litigation. More particularly, Nike categorically denies that it discriminated against employees on the basis of their race, harassed African-American employees, created a hostile work environment, or has condoned any such conduct. Contrary to the allegations in the Litigation, Nike also denies that any company-wide pattern or practice of race discrimination or raced-based harassment exists or ever existed at Niketown Chicago.

On March 22, 2006, the Court granted class certification of Plaintiffs' claims. Specifically, the Court certified the following classes for purposes of liability, monetary and injunctive relief:

- **Hostile Work Environment Class:** All African-American employees and managers who are or were employed at Niketown Chicago at any time between December 17, 1999 and the present who allegedly were subjected to a hostile working environment.

- **Job Segregation/Wage Disparity Class:** All current and former non-managerial African-American employees at Niketown Chicago who allegedly were assigned to lower paid positions in the stockroom or as cashiers because of their race during the period between December 17, 1999 and the present.

- **Promotion Class:** All current and former non-managerial African-American employees at Niketown Chicago who allegedly were denied promotions or deprived of the ability to pursue promotions because of their race during the period between December 17, 1999 and the present.

- **Discipline Class:** All current and former non-managerial African-American employees at Niketown Chicago who allegedly were subjected to racially-biased application of workplace rules and regulations that resulted in discipline up to and including termination, during the period between December 17, 1999 and the present.

- **Benefits Class:** All current and former non-managerial African-American employees at Niketown Chicago who allegedly applied for, requested and/or were entitled to benefits but were denied those benefits because of their race, during the period between December 17, 1999 and the present.

The Court's class certification ruling did not make any findings or conclusions about the underlying merits of Plaintiffs' claims, and the Court has never determined which side is right.

The Parties engaged in extensive and comprehensive class discovery for over two years, including dozens of depositions and the exchange of voluminous documents. Through this exhaustive process, the Parties developed a thorough understanding of the facts and applicable law, which enabled them to assess the relative merits of the claims and defenses asserted by each side. The Parties have participated in mediated settlement negotiations sporadically since June 2006. These negotiations have been conducted at arms-length with the assistance of, at various times, a professional mediator. These efforts resulted in an agreement to settle this action prior to a trial on the merits, subject to this Court's review and approval after notice, an opportunity for members of the Settlement Class to object or opt out of the settlement, and an evidentiary fairness hearing.

This Consent Decree is entered into by Class Counsel on behalf of Named Plaintiffs and the Settlement Class Members and Nike. The Parties agree that, after carefully considering the facts and applicable law, the uncertainty of continued litigation, and as a result of having engaged in extensive arms-length negotiations, it would be in their best interests to finally resolve all matters by entry of this Consent Decree. The Parties anticipate that upon its entry by this Court, this Consent Decree shall be final and binding upon the Class, the Parties, their

2

successors, and assigns and shall release all claims to the extent allowed under Rule 23. The

Parties, by and through their respective undersigned counsel, have agreed to this Consent Decree

on the terms and conditions set forth below and subject to the approval of this Court.

## II.   DEFINITIONS

The following terms, when used in this Consent Decree, shall have the following

meanings as set forth below. All terms defined in the singular shall have the same meaning

when used in the plural, and all terms defined in the plural shall have the same meaning when

used in the singular.

2.1.   **"Best Efforts"** means taking steps in good faith and reasonably designed to

achieve compliance with specified objectives to which the best efforts are directed.

2.2.   **"Claimant"** means any Class Member who submits a Claim Form pursuant to

Paragraph 10.3, *infra*.

2.3.   **"Claim Form"** means the form on which a Claimant submits a written

description of his/her eligible claims to the Settlement Administrator.

2.4.   **"Claim Reviewer"** means the persons or entities selected by Class Counsel to

review and evaluate Claim Forms and to recommend to the Court the monetary awards to be

distributed from the Class Claims Portion of the Settlement Fund, as described in Section X,

*infra*.

2.5.   **"Class" and/or "Plaintiff Class"** means the classes certified by the Court's

March 22, 2006 order, specifically:

- **Hostile Work Environment Class:** All African-American employees and managers who are or were employed at Niketown Chicago at any time between December 17, 1999 and the date of Preliminary Approval who allegedly were subjected to a hostile working environment.

- **Job Segregation/Wage Disparity Class:** All current and former non-managerial African-American employees at Niketown Chicago who allegedly were assigned to lower

3

paid positions in the stockroom or as cashiers because of their race during the period between December 17, 1999 and the date of Preliminary Approval.

- **Promotion Class:** All current and former non-managerial African-American employees at Niketown Chicago who allegedly were denied promotions or deprived of the ability to pursue promotions because of their race during the period between December 17, 1999 and the date of Preliminary Approval.

- **Discipline Class:** All current and former non-managerial African-American employees at Niketown Chicago who allegedly were subjected to racially-biased application of workplace rules and regulations that resulted in discipline up to and including termination, during the period between December 17, 1999 and the date of Preliminary Approval.

- **Benefits Class:** All current and former non-managerial African-American employees at Niketown Chicago who allegedly applied for, requested and/or were entitled to benefits but were denied those benefits because of their race, during the period between December 17, 1999 and the date of Preliminary Approval.

2.6. **"Class Counsel"** means Noelle Brennan and Ines Monte of the law firm of Brennan & Monte Ltd. and Randall Schmidt of the Edwin F. Mandel Legal Aid Clinic of the University of Chicago Law School.

2.7. **"Class Member"** means any current or former African-American employee who falls within the definition of any of the classes identified in Paragraph 2.4, *supra*.

2.8. **"Compliance Officer"** means the corporate Retail Human Resources Director designated to ensure Niketown Chicago's implementation and compliance with the injunctive relief provisions of the Consent Decree, as described in Section IX, *infra*.

2.9. **"Consent Decree" or "Decree"** means this document, which has been signed by counsel of record for the Parties, subject to final approval and adoption by the Court, and which contains the following attached exhibits:

> EXHIBIT A – PRELIMINARY APPROVAL ORDER
> EXHIBIT B – PRELIMINARY NOTICE
> EXHIBIT C – REQUEST FOR OPT-OUT STATEMENT
> EXHIBIT D – NOTICE OF FINAL APPROVAL OF CONSENT DECREE
> EXHIBIT E – ORDER ON DISMISSAL
> EXHIBIT F – JOINT PUBLICITY STATEMENT

**2.10.** **"Counsel of Record"** means all counsel of record for the Parties and whom are signatories to this Consent Decree.

**2.11.** **"Court"** means the United States District Court for the Northern District of Illinois, and the Judge thereof having been assigned to preside over the Litigation, or proceedings relevant to the Case.

**2.12.** **"Diversity Consultant"** means the independent monitor appointed by the Court to monitor NTC's compliance with the injunctive relief provisions in the Consent Decree, as described in Section IX, *infra*.

**2.13.** **"Effective Date"** means the date on which the time for filing an appeal from the Court's final approval of this Consent Decree has either expired without an appeal being filed, or if later, after any appeal has been fully resolved upholding the agreement (including requests for rehearing, rehearing *en banc*, and petitions for *certiorari*), at which time the parties become bound to perform the obligations set forth in this consent Decree, and the terms of this Decree become binding on NTC, the Settlement Class, and anyone else who has undertaken an obligation under this Decree.

**2.14.** **"Eligible Claim"** means any race discrimination or racial harassment claim, including class and individual claims, against NTC that arose or could have arisen at any time during the Liability Period, as defined in Paragraph 2.16, *infra*.

**2.15.** **"Eligible Claimant"** and/or **"Eligible Class Member"** means any Class Member who timely and properly submits to the Settlement Administrator a Claim Form and is entitled to a monetary award from the Class Claims Portions of the Settlement Fund under the terms of a Distribution Formula approved by the Court. "Eligible Claimant" and/or "Eligible Class Member" specifically excludes any Class Member who previously executed a valid and

5

enforceable release of all of his or her Eligible Claims, unless such release specifically provides for recovery under this Consent Decree.

2.16. **"Final Approval"** means the entry of the Court's order granting final approval of this Consent Decree, which reflects that the Court concludes that the terms of this Consent Decree are fair, reasonable and adequate to the Class as a whole.

2.17. **"Liability Period"** means the period from December 17, 1999 to the Date of Preliminary Approval of the Consent Decree.

2.18. **The "Litigation" and/or This "Case"** means all proceedings relating to or arising from *Smith, et al., v. Nike Retail Services, Inc.*, 03 C 9110 (N.D. Ill.), including any outstanding charges filed by any Named Plaintiffs with the Equal Employment Opportunity Commission or Illinois Department of Human Rights.

2.19. **"Named Plaintiffs"** means the individual plaintiffs who brought suit: Keith Smith, Ria McDougal, John Lewis, Vernetta Duckworth, Janise Page, Jacques Walker, Shu-Ra Rogers, Todd Lindberg, Anthony Brown, Jason Readus, Dwight Brown, Robert Jackson, Billy Brown, Crystal Barbee, Marquisha Hudson, Anthony Barlow, Larry Posey and DaJauna Young.

2.20. **"Nike"** means Nike Retail Services, Inc., and each and all of its past and present (as of the Effective Date) predecessors, affiliates, and successors.

2.21. **"Niketown Chicago"** or **"NTC"** means the Niketown Chicago store, located at 669 N. Michigan Avenue, Chicago, Illinois.

2.22. **"Parties"** means Nike, the Named Plaintiffs and the Settlement Class Members.

2.23. **"Preliminary Approval"** means the entry of the Court's Order granting preliminary approval of this Consent Decree, which reflects that the Court concludes that the terms of this Consent Decree appear sufficiently fair, reasonable and adequate to the Class as a

6

whole to warrant notice to the Class, an opportunity for Class Members to object or opt out, and a fairness hearing to consider final approval of the Consent Decree.

**2.24.** **"Settlement"** means the settlement terms embodied in this Consent Decree.

**2.25.** **"Settlement Class Member"** means any Class Member who does not opt out of the claims process of the Settlement.

**2.26.** **"Settlement Administrator"** means the person or entity selected by Class Counsel to conduct certain administrative tasks as described in Paragraph 13.1 *infra*.

**2.27.** **"Service"** means delivery of notice and/or papers, and shall be defined as service is specified in the Federal Rules of Civil Procedure.

## III. FINDINGS

The Court, having carefully examined the terms and provisions of this Consent Decree, and based on the pleadings and the record in this case, finds as follows:

A.     This Court has jurisdiction over the subject matter of this action and over the Parties solely for purposes of entering and enforcing this Consent Decree;

B.     The terms of this Consent Decree are adequate, fair, reasonable, equitable and just; and

C.     This Consent Decree conforms with the Federal Rules of Civil Procedure and is not in derogation of the rights or privileges of any person, any Party, or the Class. The final approval of this Consent Decree will be in the best interests of the Parties and the Class.

## IV. GOALS AND GENERAL PROVISIONS OF THE SETTLEMENT AGREEMENT AND CONSENT DECREE

**4.1.     Goals Of The Consent Decree and Settlement Agreement**. The Parties enter into this Consent Decree and Settlement Agreement to achieve the following goals:  (a) to resolve all claims asserted in the Litigation; (b) to ensure that Settlement Class Members are

7

fairly compensated for release of their claims; and (c) to ensure that effective mechanisms are in place to prevent race-based discrimination or race-based harassment at NTC.

**4.2.    Release.**

**4.2.1.**    Except with respect to any persons who have effectively exercised a right to opt out of this Decree, in consideration of the promises contained in, and the benefits provided or to be provided hereunder, upon the Effective Date this Consent Decree shall resolve, extinguish, and finally and forever bar any and all claims in law or in equity which any of the Named Plaintiffs, or their respective representatives, agents, heirs, executors, administrators, successors, or assigns have, may have, may have had, or in the future may have against Nike arising from or related to events that occurred during the Liability Period. Nothing herein, however, shall serve to waive or otherwise limit Named Plaintiffs' vested rights in any employment benefits protected under the Employee Retirement Income Security Act of 1974 ("ERISA") which were not included in the claims of the Benefits Class in this Litigation.

**4.2.2.**    Except with respect to any persons who have effectively exercised a right to opt out of this Decree, in consideration of the promises contained in, and the benefits, processes and procedures provided or to be provided to the Settlement Class Members hereunder, upon the Effective Date this Consent Decree shall resolve, extinguish, and finally and forever bar any and all Claims in law or in equity for monetary relief or for equitable relief for alleged race-based discrimination or race-based harassment which any of the Settlement Class Members, or their representatives, agents, heirs, executors, administrators, successors, or assigns have, may have, may have had, or in the future may have against Nike arising from or related to events that occurred during the Liability Period which are in alleged violation of Section 1981 and/or Title VII. As used in this Section, the phrase "claims for monetary relief" shall include all

8

claims for economic or non-economic monetary damages of any kind which allegedly arose because of race-based harassment or race-based discrimination as alleged in this Litigation, including, without limitation, claims for back pay, employment benefits (including, without limitation, retirement, life insurance, and 401(k) savings plan benefits, and the monetary equivalent of various forms of leave), and/or interest (including both pre-judgment interest and post-judgment interest), compensatory damages and punitive damages. Nothing herein, however, shall serve to waive or otherwise limit Settlement Class Members' vested rights in any employment benefits protected under the Employee Retirement Income Security Act of 1974 ("ERISA") which were not included in the claims of the Benefits Class in this Litigation.

4.2.3. Upon the Effective Date, the doctrines of *res judicata* and collateral estoppel shall bind all Settlement Class Members with respect to all claims identified above. This Consent Decree may be pled as a full and complete defense to any subsequent action or other proceeding involving any Settlement Class Member which arises out of the claims released and discharged by this Consent Decree.

4.3. **Covenant Not to Sue**. In consideration of the promises contained in this Consent Decree and the benefits, processes and procedures provided or to be provided hereunder, the Settlement Class Members also agree never to sue Defendant in any forum for any of the claims or theories covered by the Release language in Paragraph 4.2 above. They additionally agree that any such claim, if filed by any one or more of them, shall be dismissed with prejudice. Excluded from this covenant not to sue are any claims that cannot be waived by law.

4.4. **No Admission Of Liability**. This Consent Decree does not and is not intended to constitute and shall not be deemed to constitute an admission by Nike as to the merits, validity, or accuracy of any of the allegations, claims, or defenses in the Litigation, nor shall it be used as

9

a means to require the continuation of any program or action beyond the term of this Consent Decree, except as may be necessary to enforce the terms of this Consent Decree. By entering into this Consent Decree, Nike does not admit or concede, expressly or impliedly, but instead denies, that it has in any way violated Title VII, the common law of any jurisdiction, any federal, state, or local law, statute, ordinance, regulation, rule, or executive order, or any obligation or duty at law or in equity.

**4.5.** **No Court Findings As To Liability**. In agreeing to the terms of this Consent Decree, the Parties acknowledge that neither this Court nor any other court has made any findings or expressed any opinion concerning the merits, validity, or accuracy of any of the allegations, claims, or defenses in the Litigation.

**4.6.** **Not Admissible In Any Other Proceeding**. Nothing in this Consent Decree, nor any action taken in implementation thereof, nor any statements, discussions, or communications, nor any materials prepared, exchanged, issued, or used during the course of the Litigation or in negotiations leading to this Consent Decree, are intended by the Parties to, nor shall any of the foregoing constitute, be introduced, be used, or be admissible in any way in the Litigation, or in any other judicial, arbitral, administrative, investigative, or other proceeding of whatsoever kind or nature as evidence of race-based discrimination or race-based harassment, or as evidence of any violation of Title VII; the common law of any jurisdiction; any federal, state, or local law, statute, ordinance, regulation, rule, or executive order; or any obligation or duty at law or in equity. Notwithstanding the foregoing, the Consent Decree may be used by the Plaintiff Class or Nike in any proceeding in this Court to enforce or implement the Consent Decree or any orders or judgments of this Court entered into in connection herewith.

10

**4.7.** **Failure to Obtain Final Approval Of Consent Decree.** In the event this Consent Decree does not become final or effective in its current form (for whatever reason), this entire Consent Decree shall become null and void and of no force or effect at the sole option of Nike. The Parties further agree that the Litigation shall be reinstated if Nike exercises its option to void the Consent Decree pursuant to any of the conditions enumerated in Section XV below.

**V. JURISDICTION**

The Court has jurisdiction over the Parties and the subject matter of the Litigation. The Litigation asserts claims under Section 1981 and Title VII that, if proven, would authorize the Court to grant the monetary and equitable relief set forth in this Consent Decree. Venue is proper in this District. This Court shall retain jurisdiction of the Litigation during the duration of this Consent Decree for the purpose of entering all orders, judgments and decrees that may be necessary to implement and enforce the relief provided herein. The procedures described below are not intended to diminish this Court's inherent power to enforce any provision of this Consent Decree. All class and individual race-based discrimination and race-based harassment claims in the Litigation shall be dismissed with prejudice upon the Effective Date of this Consent Decree, provided that the Court retains jurisdiction to enforce the terms of this Consent Decree as described in this Section. A copy of the Proposed Preliminary Approval Order to be entered is attached hereto as Exhibit A.

**VI. EFFECTIVE DATE AND DURATION OF THE CONSENT DECREE**

**6.1.** **Effect Of Consent Decree.** Upon its entry by the Court following Final Approval, the Consent Decree shall constitute an order of the Court and all of its provisions will become enforceable by the Parties in the manner set forth in this Consent Decree. The Parties agree that they shall not appeal from the Consent Decree or the Court's Order.

11

**6.2.    Joint Request For A Court Order.**  The Parties agree that they will seek entry of an Order in the form attached hereto and fully incorporated herein as Exhibit E, which dismisses all class and individual race-based discrimination and race-based harassment claims in the Litigation against Nike, with prejudice, and without costs to any Party except as expressly provided herein, and which incorporates a Release of all claims as specified herein on behalf of the Named Plaintiffs and the Settlement Class as set forth in Paragraph 4.2.

**6.3.    Effective Date.**  The Effective Date shall be the date on which the time for filing an appeal from the Court's Final Approval of this Consent Decree has either expired without an appeal being filed, or if later, after any appeal has been fully resolved upholding the Consent Decree (including requests for rehearing, rehearing *en banc*, and petitions for *certiorari*), at which time the Parties become bound to perform the obligations set forth in this Consent Decree, and the terms of this Decree become binding on Nike, NTC, the Settlement Class, and anyone else who has undertaken an obligation under this Decree.

**6.4.    Expiration Date.**  This Consent Decree and any order of the Court shall expire and shall be without any force or effect two (2) years from the Effective Date, unless extended by written agreement of the Parties.

## VII.    SCOPE OF THE CONSENT DECREE

**7.1.    Scope Of The Consent Decree**.  This Consent Decree resolves all class and individual claims of race-based discrimination and race-based harassment of the Named Plaintiffs and the Class that were or could have been brought in the Litigation.

**7.2.    Persons Covered.**  If this Consent Decree is approved by the Court, then all persons within the Class, as defined by Paragraph 2.4, *supra*, are bound by its terms, except those Class Members who effectively exercise a right to opt out of the Class and the Settlement.

12

Class Members who elect to opt out must do so in writing, in the manner and by the date specified in the Preliminary Notice attached hereto as Exhibit B.

**7.3.** **On-Going Best Efforts To Ensure The Effectuation Of The Settlement**. The Parties agree to make and undertake their best efforts on an on-going basis to effectuate, as well as to seek entry of this Consent Decree, or if applicable, to defend, this Consent Decree from any legal challenge by appeal, collateral attack, objection, or otherwise.

## VIII. RECOGNITION OF RETAINED MANAGERIAL DISCRETION

**8.1.** **Overall Management Discretion Over The Workplace And Workforce**. Subject to the terms of this Consent Decree, Nike shall at all times retain managerial discretion, *inter alia*, to select, hire, assign, transfer, train, promote, compensate, discipline, or terminate any of its employees, including but not limited to any Class Member, in accordance with applicable law.

**8.2.** **Managerial Discretion Over Human Resource Functions**. Subject to the terms of this Consent Decree, Nike shall at all times retain the unilateral right to modify its existing human resource functions, terms and conditions of employment, programs, procedures, practices, or policies or otherwise adopting any new human resource functions, terms and conditions of employment, programs, procedures, practices, or policies as Nike may deem appropriate in accordance with applicable law.

**8.3.** **No Requirement To Violate Any Law**. Nothing in this Consent Decree shall require Nike to violate any applicable law, ordinance, or regulation.

## IX. EQUITABLE RELIEF

**9.1.** **No Automatic Injunction.** This Consent Decree shall not operate as an automatic injunction. Nike agrees to abide by applicable federal and state employment laws including Title VII of the Civil Rights Act of 1964 and the Civil Rights Act of 1991.

Furthermore, in lieu of an injunction, Nike will agree that the District Court shall retain jurisdiction for two years after the Effective Date for purposes of enforcing this Consent Decree.

**9.2.** **Compliance Officer at World Headquarters and Ombudsperson at Niketown Chicago.** Nike will designate its existing corporate Retail Human Resources Director, (who reports to the Vice President of Human Resources – United States) as the Compliance Officer to perform certain duties under the Consent Decree that relate to Niketown Chicago. Nike shall also designate a local Ombudsperson at Niketown Chicago who shall report directly to the Compliance Officer.

**9.3.** **Duties of Compliance Officer.** The Compliance Officer shall ensure Niketown Chicago's implementation and compliance with the injunctive relief provisions of the Consent Decree. The Compliance Officer's duties shall include:

a.   Implementing and monitoring changes to human resources and loss prevention policies at Niketown Chicago, to the extent necessary to comply with this Consent Decree;

b.   Overseeing the development and/or implementation of training and education programs to be provided under the Consent Decree;

c.   Submitting progress reports and other monitoring and reporting material provided for in the Consent Decree to the outside Court-appointed Diversity Consultant on a regular basis; comprehensive written reports shall be provided at least on an semi-annual basis.

d.   Overseeing the investigation, collection, tracking, and appropriate resolution of complaints of unlawful race discrimination submitted under Nike's internal complaint procedure at Niketown Chicago.

14

**9.4.** **Duties of Ombudsperson.** The Niketown Chicago Ombudsperson shall be responsible for assisting the Compliance Officer in the day-to-day implementation of the injunctive relief contained in this Settlement Consent Decree at Niketown Chicago. In addition, the Ombudsperson shall be responsible for handling complaints of race discrimination, retaliation, and/or harassment of African-American employees at Niketown Chicago by (1) ensuring that each report or complaint is timely and appropriately investigated; (2) monitoring the investigation of such complaints, and (3) reporting the result to the appropriate management officials, including the Compliance Officer and the Diversity Consultant. The Ombudsperson shall make semi-annual status reports to the Compliance Officer and Diversity Consultant.

**9.5.** **EEO and Diversity Training.** Nike shall provide training regarding equal employment opportunity to all supervisors and managers at Niketown Chicago on an annual basis during the term of the Consent Decree. Such training must include the following topics: (1) compliance with the Consent Decree; (2) equal opportunity employment; (3) federal, state, and Company prohibitions of unlawful race discrimination and retaliation; (4) diversity issues; and (5) other topics that will encourage equal opportunity in recruiting, hiring, assigning, promotion, and retention of employees, including its African American employees. Nike agrees that no less than two hours shall be devoted to training on these topics for each participant and that the first training session will be provided within four months following the Effective Date of the Consent Decree. With respect to those persons who are hired, transferred or promoted into any manager or supervisor position at Niketown Chicago after the first training session referenced above, Nike agrees that they will receive orientation training on these topics and no less than two hours of training on these topics within six months of the hire, transfer or promotion.

15

**9.6.** **Court-Appointed Diversity Consultant**. The parties shall try to agree on an independent Diversity Consultant to be appointed by the Court to monitor Nike's compliance with the injunctive relief provisions in the Consent Decree. All fees and expenses of the Diversity Consultant shall be paid by Nike. In the event the parties cannot reach agreement on the independent Diversity Consultant, a list of four candidates shall be jointly submitted by the parties to the Court before the scheduled Fairness Hearing. The Court shall select and appoint the independent Diversity Consultant from this list. Each side shall furnish the names of two candidates for inclusion in this list. The list shall not identify which candidates were proposed by which side.

The Diversity Consultant will review all existing Niketown Chicago employment policies and practices related to promotions, terminations, discipline, hiring, and benefits for compliance with Title VII and this Consent Decree, and will review the Compliance Officer's development and/or implementation of procedures, practices, and methodologies to achieve the programmatic relief objectives of this Consent Decree.

The scope of the Diversity Consultant's responsibilities will include oversight of Nike's compliance with the Consent Decree and shall include authority to review, oversee and monitor Nike's applicable human resources and loss prevention practices at Niketown Chicago to ensure that Nike's reforms carry out the goals contained in the terms of this Consent Decree. Nike is not precluded from developing and implementing such additional programs as it may find appropriate.

After conferring with the Diversity Consultant, Nike's Compliance Officer will recommend a timetable for the implementation and completion of any revisions and additions to current Niketown Chicago employment policies and practices, subject to the terms of this

16

Consent Decree. Such deadline(s) may be changed for good cause shown. The Compliance Officer shall review and report on Nike's progress in implementing the terms of this Consent Decree against this timetable. Subject to its obligations under this Consent Decree, Nike shall retain full operational and managerial authority over all of its operations.

9.7.    **Access to Information**. The Diversity Consultant will have reasonable access to all non-privileged relevant books, data, documents, and other sources of information, in whatever form they are maintained in the ordinary course of business, to the extent that such access is necessary and appropriate to the exercise of his or her responsibilities. Given the potential need for the Diversity Consultant to review confidential business information of Nike, the Diversity Consultant will sign a mutually agreeable Confidentiality Agreement, which will be subject to judicial enforcement. The United States District Court for the Northern District of Illinois will retain jurisdiction to enforce this Confidentiality Agreement.

To the extent necessary to carry out his/her duties, the Diversity Consultant shall be allowed to communicate directly with any Niketown Chicago employees or former employees, with prior notice to Nike. In the event that the Diversity Consultant needs to communicate directly with Nike Retail Human Resources or Employee Relations employees with responsibility for Niketown Chicago, he/she shall notify the Compliance Officer of his/her intent. Nothing herein shall require that the Diversity Consultant obtain prior approval from Nike before communicating with any current or former employees authorized in this paragraph.

9.8.    **Reporting and Monitoring Function**. Within six months after the Effective Date of the Consent Decree, the Diversity Consultant will complete an initial report, based on data compiled by the Compliance Officer, and submit it to the Compliance Officer, Nike, and Class Counsel for review. The Compliance Officer, Nike and Class Counsel shall have an

17

opportunity to review and comment on the report, including the right to correct any perceived problems before the report is submitted to the Court. Within forty-five days after submission of the initial report to the Compliance Officer, Nike and Class Counsel, the Diversity Consultant shall make any appropriate changes and file such report with the Court.

The initial report will include a review and evaluation of Niketown Chicago's Human Resources and Loss Prevention policies and practices as they relate to promotions, terminations, discipline, hiring, and benefits, including addressing any perceived deficiencies in Niketown Chicago's current practices, any reforms implemented since the Effective Date of the Consent Decree, any recommendations made by the Compliance Officer or Diversity Consultant, and Nike's compliance with the Consent Decree. The initial report also will identify what the Compliance Officer and/or Diversity Consultant believe remains to be done by Nike (if anything), why it needs to be done, and a recommended timetable for accomplishing it. Thereafter, for the duration of the appointment of the Compliance Officer and Diversity Consultant, they will be responsible for continuing their review of the employment and loss prevention policies and practices of Niketown Chicago as they relate to promotions, terminations, discipline, hiring, and benefits. After submission of the initial report, the Diversity Consultant shall submit three additional reports to the Court in six month intervals, subject to the review, comment and revision process described above. The final report shall be submitted at least 30 days prior to the expiration of the Consent Decree.

**9.9.** **Specific Programmatic Relief**. During the first full year after the Effective Date of the Consent Decree, Nike's Compliance Officer, with the oversight of the Court-appointed Diversity Consultant, will implement the specific programmatic relief described in the following sections (a) through (g) below:

18

### a.    EEO Objectives

Niketown Chicago shall establish and/or maintain appropriate and measurable store-wide EEO objectives focused on providing equal employment opportunities for all employees in non-managerial sales positions without regard to race. These EEO Objectives shall encompass measurable goals for: ensuring prompt, thorough and appropriate resolution of race discrimination and retaliation complaints; and measuring success in reforming and/or maintaining applicable human resources and loss prevention practices to eliminate any disparate treatment of African-American employees. Nothing contained herein shall require that a quota or certain number of African-American employees be hired or promoted into any position or job classification, as such decisions remain solely within Nike's managerial discretion and in accordance with applicable law.

### b.    Discipline

All discipline of Niketown Chicago non-managerial employees will be administered on the basis of criteria that are equally and consistently applied to all non-managerial employees regardless of race at Niketown Chicago. To that end,

- all written discipline issued to non-managerial store-level employees will be administered on the basis of criteria that is equally and consistently applied to all such employees regardless of race;
- Orientation for managers will include training and managers will receive regular refresher training on fair and objective discipline practices, with particular coverage of EEO diversity issues;
- written disciplinary actions will be provided to the individuals disciplined to review, keep a copy, and sign to indicate review and receipt, but not necessarily agreement; and

19

- written discipline will include a comment opportunity if the discipline is believed to be unfair and/or inaccurate.

### c.     Staffing

Nike, through its Compliance Officer and Ombudsperson, shall evaluate and revise, to the extent necessary to achieve the goals of this Consent Decree, Niketown Chicago's promotion and employee development process for non-managerial employees to ensure that all internal potential job candidates have equal access to notice of available positions and equal access to application procedures regardless of race, including by making available to all employees promotability criteria and reviewing and revising, to the extent necessary, current job posting procedures. Niketown Chicago shall also establish and/or maintain practices and procedures to (1) require managers to make promotion and transfer decisions for open non-managerial sales positions at Niketown Chicago without regard to the race of the job candidate, and (2) ensure that all interested and qualified candidates have a fair opportunity to be considered for advancement to higher level non-managerial positions at Niketown Chicago. Nothing contained herein shall require that a quota or certain number of African-American employees be hired or promoted into any position or job classification, as such decisions remain solely within Nike's managerial discretion and in accordance with applicable law.

Niketown Chicago shall also evaluate and revise, to the extent necessary, its methods for determining the appropriate job competencies, including job-related knowledge, skills, and abilities ("KSA's") needed to perform its respective non-managerial job positions. The Court-appointed Diversity Consultant will review these methods.

Niketown Chicago shall also ensure that all Niketown Chicago non-managerial employee training and similar special career advancement programs present equal career development

20

opportunities for African-American employees. Nothing in this section or this Agreement shall limit Nike's right to select the best qualified candidate available for each job.

### d.    Reporting on Promotions, Hiring, Terminations and Benefits

As part of his/her annual report to the Diversity Consultant, the Compliance Officer will provide an executive summary of data relating to promotions, hiring, termination and benefits at Niketown Chicago during the reporting period, including (1) the number and race of all applicants and successful candidates for open non-managerial sales positions during the reporting period, (2) the number and race of all terminated employees during the reporting period and, (3) the number and race of any benefits-eligible employees in non-managerial positions who are not receiving benefits for which they are eligible.

### e.    Centralized Managerial Oversight

The Compliance Officer will monitor the relevant employment and loss prevention practices at Niketown Chicago to ensure there is no unlawful disparate treatment against African-Americans. Nike also will agree to continue its appeal procedures for Niketown Chicago managerial determinations regarding promotion, discipline, termination, benefits, and loss-prevention related decisions.

### f.    Mentoring and Professional Development

Niketown Chicago shall establish or continue a formal mentoring and professional development program for its non-managerial Niketown Chicago African-American employees that shall include individual development planning, career counseling and mentoring.

### g.    Loss Prevention.

Nike shall maintain, or develop to the extent necessary,  standardized practices, procedures, and guidelines to be followed by Loss Prevention personnel regarding the monitoring of Niketown Chicago employees and customers. These guidelines shall prohibit

21

Loss Prevention personnel from considering race or color, in any fashion or to any degree, in deciding whether to surveil, stop, detain, or interrogate any customer or employee of Niketown Chicago. Nike shall continue to provide training to all Loss Prevention personnel concerning these procedures, as well as regular diversity/EEO training.

Nike shall also maintain, or develop to the extent necessary, a complaint procedure to provide for the filing, investigation, and, if appropriate, remedying complaints by Niketown Chicago employees that they are being subjected to different treatment by Loss Prevention personnel during check-out procedures due to race.

Nike shall maintain, or develop to the extent necessary, reporting procedures to be followed by Loss Prevention personnel when they are monitoring Niketown Chicago employees and customers. These reporting procedures shall require Loss Prevention personnel to document the race of every employee and customer where a written report is generated. This information shall be provided to the Compliance officer and the Court appointed Diversity Consultant on an annual basis.

### 9.10. Additional Affirmative Relief.

#### a. Toll Free Hotline

Niketown Chicago shall maintain the toll-free number for its employees that is designed, in part, to receive complaints of race discrimination, harassment, and/or retaliation.

#### b. Internal Complaint Process

Niketown Chicago shall maintain, or adopt to the extent necessary, an internal complaint process that shall be effectively and regularly publicized to all Niketown Chicago employees. The revised internal complaint process shall provide:

(1) written notification to employees describing how investigations will be conducted;

22

(2)     prompt and thorough investigation of complaints by an individual specially trained to conduct such investigations who is not connected with the complaint;

(3)     written notification to employees that investigations will include interviews of all relevant witnesses, including the complainant, and reviews of any relevant documents;

(4)     maintenance of a written record of all investigatory steps, including interview notes, findings, conclusions, and actions taken;

(5)     prompt resolution of complaints;

(6)     confidentiality of the complaint and investigation, to the extent possible;

(7)     communication of the resolution of any complaint shall be timely provided to the complainant;

(8)     any complainant shall have the right to request a review of such resolution by the Compliance Officer

(9)     multiple avenues for lodging such complaints, including submission of an oral or written complaint to any level of supervisor or manager; and a toll-free telephone number to receive such complaints;

(10)     written notification that all supervisors and managers must immediately report any complaint of race discrimination or harassment, whether written or oral, to the Compliance Officer, for investigation by a designated individual;

(11)     written notification that any retaliation against any employee for use of the internal complaint process or for otherwise assisting the process will not be tolerated; and

23

(12)    written notification to all employees that if an allegation of discrimination or retaliation is substantiated, such conduct will result in appropriate discipline, up to and including discharge.

**9.11.  Community Outreach.**    Niketown Chicago shall continue its level of commitment to the African-American community in the Chicago area.  By way of example only, recent efforts by Nike have included:

a.    **Chicago Public Schools:**

- Investment of over $1.2 million to implement the NikeGO PE Program in 87 CPS elementary schools. Each school received training, curricula, and equipment kits valued at $10,000 each. Over 400 CPS teachers fully-trained to implement a physical activity lesson plan in a traditional classroom setting. Over 5,000 CPS elementary school students involved in the program and getting physically active on a consistent basis.

- Donated over 3,000 pairs of footwear with a retail value of over $240,000.

- Adopted Irvin C. Mollison Elementary School.

- Created a strategic partnership with Little Village High School.

b.    **Chicago Park District**

- Investment of $250,000 to build 2 soccer pitches at Bessemer and Kilbourn Parks

- Investment of $240,000 to build 8 basketball courts in 4 CPD parks

- Commitment to invest $100,000 to build a running track at a CPD park

- Donated to CPD over 10,000 pairs of footwear with a retail value of over $800,000

- Sponsorship of the NeighborSports summer program

24

c. **Chatham Neighborhood**

- Opened Chatham Nike Factory Store

- $5,000 donated to 10 community organizations respectively

- $5,000 donated to Jane A. Neil Elementary School and the school adopted by the Chatham Nike Factory Store

- Utilizing minority owned local bank.

## X. MONETARY RELIEF

**10.1. Settlement Fund.** Within seventy-two (72) hours following Final Approval of this Decree, Nike shall pay by wire transfer to the Seaway National Bank of Chicago (pursuant to transfer instructions to be provided by Class Counsel after execution of this Decree by all Parties) with the understanding that Nike, including any of its agents, do not have any interest in Seaway the sum of Seven Million Six Hundred Thousand Dollars ($7,600,000.00). This payment is made in order to satisfy the race discrimination and race-based harassment claims of all Settlement Class Members and Named Plaintiffs as well as for other purposes identified in this paragraph. The Class Claim Portion of the payment, as defined below, is payment is for alleged compensatory damages and/or punitive damages sought on behalf of the Class and shall not constitute backpay wages for any Settling Class Member except to the extent required by law. The monies so transferred, together with interest subsequently earned thereon, shall constitute the Settlement Fund. The above described $7.6 million Settlement Fund shall constitute all the funds or monies to be paid by Nike in connection with: (1) the resolution of the race discrimination and race-based harassment claims asserted in this matter; (2) this Decree (and attachments); and (3) the dismissal of the Complaint filed in this Action. This sum is inclusive of payment for: (1) all awards to and on behalf of the Settlement Class Members and Named Plaintiffs; (2) attorneys' fees and expenses of the Classes and Named Plaintiffs; (3) all

25

costs of notice and settlement administration; (4) all taxes imposed on the Settlement Fund subsequent to the date of its creation by Nike's transfer of the Settlement Fund to the Seaway National Bank of Chicago and all expenses related to those taxes; and, (5) all taxes required to be withheld and paid over to the appropriate taxing authorities with respect to payments made by the Fund. Nothing in the foregoing sentence, however, shall release Nike from expenses required to fulfill its obligations under this Decree. All fees and expenses associated with the Diversity Consultant shall be paid by Nike and shall not be paid from the Settlement Fund. Further, all fees, costs, and any expenses associated with the Equitable Relief described in Section IX shall be paid by Nike and shall not be paid from the Settlement Fund.

### 10.2. Creation and Administration of Settlement Fund.

#### 10.2.1. Creation.

(a)     The Settlement Fund shall be an irrevocable trust under Illinois law and a Qualified Settlement Fund under Section 468B of the Internal Revenue Code and shall be administered by the Administrators under the Court's supervision. The Settlement Fund will consist of three portions: one Class Claims Portion in the amount of $5,000,000 (to be divided as follows: $2,500,000 for the Hostile Environment Class; $730,000 for the Job Segregation Class; $400,000 for the Promotion Class; $600,000 for the Discipline Class; $300,000 for the Benefits Class, and $470,000 for the Named Plaintiffs Incentive Awards Portion to be divided among the 18 Named Plaintiffs; one Legal Fees and Costs Portion in the amount of $2,600,000; and one Interest Earnings Portion to be used for any taxes imposed on the Settlement Fund subsequent to the date of its creation by Nike's transfer of the Settlement Fund to the Seaway National Bank of Chicago and for administrative expenses related to the distribution of the Settlement Fund to Settlement Class Members. Applicants for awards for the Class Claims

26

Portion shall together be referred to as "Claimants," and recipients of awards from the Class Claims Portion shall together be referred to as the "Eligible Claimants."

      (b)    From the Settlement Fund and any income earned thereon, Eligible Claimants may receive payments, and Class Counsel shall be paid all fees and reimbursed for all expenses incurred. An appeal fund may be created out of the Settlement Fund and set aside before allocating the Settlement Fund among Eligible Claimants.

**10.3.   Claims Filing Procedures for Settlement of Claims of Class Members and Named Plaintiffs**. Within ten (10) business days after Final Approval of the Consent Decree, the Settlement Administrator shall mail Claim Forms to all Class Members who did not opt out. Class Members shall be entitled to submit their claims to the Settlement Administrator, under penalty of perjury, in accordance with the procedures set forth on the Claim Form. Any Class Member who obtained a final judicial determination concerning claims which would otherwise be covered by this Decree is not eligible to receive an award from the Class Claims Portions. In order to receive an award from the Class Claims Portions, a Class Member's Claim Form must be received by the Settlement Administrator on or before December 3, 2007. Claim Forms received after that date shall not be eligible, unless the Court determines that the reason for a late submission constitutes excusable neglect. The Settlement Administrator shall promptly forward all Claim Forms to the Claim Reviewer. The Claim Reviewer shall then review and evaluate all Claim Forms and recommend monetary awards from the Class Claims Portion of the Settlement Fund to the Court under seal, no later than January 31, 2008. Upon approval of the award amounts by the Court, the Settlement Administrator shall notify each Class Member of their eligibility and the amount of their award. In the event that any Class Member believes that his/her award is in error, then such Class Member must petition the Court for a correction of the

27

award within ten (10) business days after notification. After resolution of any petition for a correction, the Court shall authorize distribution of the settlement funds.

### 10.4. Distribution Formula.

**10.4.1.** Pursuant to a point formula recommended by Class Counsel and ordered by the Court, and in an effort to promote both fairness and efficiency, each Claim Form will be awarded points after review and after any necessary verification. The Claim Reviewer may in his/her discretion verify certain information provided on the Claim Form with information provided by Nike through the Preliminary Approval date. The details of the point system to be applied are subject to Court approval on recommendation by Class Counsel. All monetary awards shall be subject to the review and approval of the Court before disbursement. All Class Members receiving awards will be required to keep the amount of the awards confidential from everyone except Class Counsel, or any attorney, tax or financial adviser representing them or their spouse, life partner or members of their immediate family. If any Class Member who receives an award hereunder breaches the confidentiality provisions of this paragraph, Nike will retain all rights to pursue its enforcement remedies pursuant to Section XVI.

**10.4.2.** The point system shall be applied uniformly, will not be discretionary after Court approval and may be amended only by Court Order. The distribution formula will take into account several factors, including: length of service; dates of service; job classification; job assignment; complaints made by the Claimant to Nike regarding discrimination; whether Claimant received benefits; whether Claimant was subject to discipline; the Claimant's promotional opportunities; the Claimant's contributions to case prosecution; the Claimant's anecdotal evidence of race discrimination or race-based harassment, and the overall strength of

28

claim. Nike shall have no duty or obligation to produce additional documents, data or other information except as otherwise required by this Decree.

10.4.3. The total points awarded to all Claimants will be aggregated, and each Claimant's proportionate share of the total points will be determined. The Claimants shall then be allocated a commensurate proportion of the applicable Class Claims Portion(s).

10.5. **Tax Treatment.**

10.5.1. **Qualified Tax Status and Tax Responsibilities**. The Settlement Fund shall be a Qualified Settlement Fund within the meaning of Section 468B of the Internal Revenue Code of 1986, as amended (the "Code") and any Treasury Regulations promulgated thereunder. The parties shall cooperate to ensure such treatment and shall not take a position in any filing or before any tax authority inconsistent with such treatment.

10.5.2. **Payment of Federal, State and Local Taxes by the Settlement Fund.** The Class Claim Portion of the monetary relief paid by Nike into the Settlement Fund is for alleged compensatory damages and/or punitive damages sought on behalf of the Class and shall not constitute backpay wages for any Settling Class Member except to the extent required by law. The Settlement Fund shall (1) pay to the appropriate taxing authorities any applicable federal, state and local taxes that may be imposed on the Settlement Fund ; and shall (2) withhold and pay over to the appropriate taxing authorities any applicable federal, state, and local taxes required to be withheld and paid over pursuant to this Decree, or any applicable law. The Settlement Administrator shall arrange for the preparation and filing of all tax reports and tax returns required to be filed by the Settlement Fund and for the payment from the Settlement Fund of any taxes owed by the Settlement Fund and/or required to be withheld and/or deducted from distributions to Class Members and Named Plaintiffs. The Settlement Administrator also shall

29

arrange for the preparation, filing and issuance of any required IRS Forms 1099, W-2 or other tax related forms (including forms required by any state and local tax authorities) related to payments made to Settlement Class Members, Class Counsel, the Settlement Administrator and the Claim Reviewer from the Settlement Fund.

**10.6. Indemnification by Settlement Class Members and Named Plaintiffs.** For purposes of this indemnification, each Settlement Class Member and Named Plaintiff who receives a payment from the Settlement Fund shall be fully and ultimately responsible for payment of any and all federal, state or local taxes (excluding the employer share of employment taxes, if any, and unemployment taxes and excluding amounts properly withheld from the payment, if any) resulting from or attributable to the payment received by such Settlement Class Member or Named Plaintiff. Each Settlement Class Member and Named Plaintiff shall indemnify and hold harmless Nike, Class Counsel, the Depository Bank, and the Settlement Administrator from any tax liability, including penalties and interest and costs of any proceedings, related in any way to any acts or omissions on the part of the Settlement Class Member or Named Plaintiff. In all cases in which the tax liability that arises is not attributable to any acts or omissions on the part of a Settlement Class Member or Named Plaintiff, the Settlement Class Member or Named Plaintiff shall indemnify and hold harmless Nike, Class Counsel, the Depository Bank, and the Settlement Administrator from any tax liability, but not penalties and interest, or the costs of any proceedings related to such tax liability.

**10.7. Nike Has No Tax Obligation, Liability or Responsibility.** Nike shall have no withholding, reporting or any other tax reporting or payment responsibilities with regard to the Settlement Fund or its distribution to Class Members and Named Plaintiffs. Moreover, Nike shall have no liability, obligation, or responsibility for the administration of the Settlement Fund,

30

the determination of any formulas for disbursement, or the disbursement of any monies from the Settlement Fund except for (1) its obligation to pay the settlement amount no later than seventy-two (72) hours after Final Approval of this Decree; and (2) its agreement to cooperate in providing information which is necessary for settlement administration set forth herein.

## XI.    ATTORNEYS' FEES AND COSTS

**11.1.   Attorneys' Fees And Costs.** Class Counsel shall submit a fee application to the Court sufficiently in advance of the Fairness Hearing so that the issue may be addressed at the Fairness Hearing. Nike agrees not to contest any fee application submitted by Class Counsel up to $2,600,000. The Court shall determine the attorneys' fees, as well as costs and expenses of Litigation, to be paid to Class Counsel out of the Settlement Fund at the time of final approval of this Consent Decree. Such fees, costs and expenses shall include time to be spent in the future defending the Consent Decree, conferring with Class Members, reviewing Nike's reports, conferring with Nike's counsel, or any other legal work to be performed by Class Counsel related to monitoring, administration, and/or implementation of this Consent Decree.

**11.2.   Release of Any Claims for Attorney's Fees and Costs.** Nike shall have no obligation under this Consent Decree to pay any money for attorneys' fees and costs to Class Counsel, except as expressly set forth herein. Except as otherwise provided herein, Nike shall not be liable for any of the Named Plaintiffs' costs or attorneys' fees, statutory or otherwise, incurred in the Litigation or during the term of the Consent Decree.

**11.3.   Cost of Employment Practices.** The costs and expenses of administering the Equitable Relief in Section IX of the Consent Decree shall be paid by Nike.

**11.4.   Attorneys' Fees and Costs of Enforcing the Consent Decree.** In the event that any Party is found by the Court to be in material breach of its obligations under the Consent Decree, the prevailing Party shall be permitted to petition the Court for its reasonable attorneys'

31

fees and costs incurred as a result of any enforcement action required to be taken in order to cure such breach.

## XII. PRELIMINARY APPROVAL HEARING

**12.1.** Subject to approval by the Court, the Parties hereby agree to the following procedures and schedule for Preliminary Notice to Class Members and submission of this Consent Decree for final approval pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.

**12.2.** The Court shall conduct a Preliminary Approval Hearing on July 30, 2007 at 9:00 a.m. to hear evidence and argument regarding whether the Court should approve the compromise of the Litigation in the manner set forth herein.

**12.3.** The Parties agree that they shall jointly file this Consent Decree with the Court seeking entry of a Preliminary Approval Order in the form attached hereto and fully incorporated herein at Exhibit A.

**12.4.** At the Preliminary Approval Hearing, the Parties agree to opine to the Court that the Consent Decree is fair, reasonable, and adequate to the Class as a whole, within the meaning of that phrase as contemplated by Rule 23(e) of the Federal Rules of Civil Procedure. Counsel of Record shall request prompt judicial approval of this Consent Decree as written. The Parties agree further to use their best efforts on a joint basis to obtain prompt entry of the Order. The Parties, through their respective counsel, also agree to recommend to the Court on a joint basis that, in their respective professional opinions, the Consent Decree is reasonable and appropriate, in the best interests of justice, that the Parties have bargained for the terms in the Consent Decree, and that no section or subsection of this Consent Decree should be modified or stricken. If the Court does not execute the Preliminary Approval Order in the form attached and fully incorporated herein at Exhibit A in any material part, the Parties agree that this Consent Decree

32

shall be null and void. If this Consent Decree is terminated or fails to become effective for any reason, the Court's establishment of a provisional settlement process shall be void, and the respective rights of the Parties in this case or in any other case shall not be prejudiced in any way by the proposed Consent Decree or the Court's refusal to enter an Order approving the Consent Decree.

## XIII. PRELIMINARY NOTICE, OBJECTIONS, AND OPT-OUTS

**13.1.** On or before August 10, 2007, Class counsel shall select and retain an independent Settlement Administrator to:

(a)   distribute Preliminary Notice to Class Members attached as Exhibit B;

(b)   receive and forward to the Court and Counsel of Record any Requests for Opt-Out Statements; and

(c)   distribute Notice of Final Approval of Consent Decree and Claim Forms.

**13.2.** The Settlement Administrator shall be a person, an organization, or an entity experienced and qualified in the administration of class action monetary settlement distribution and/or claims proceedings.

**13.3.** On or before August 10, 2007, Nike shall provide to Class Counsel the names and last known addresses of Class Members and an updated "Job Actions Database," of the type produced during discovery, covering the entire Liability Period. On or before August 15, 2007, Class Counsel, through its Settlement Administrator shall issue Preliminary Notice and Request for Opt-out Statement (Exhibits B and C) to the last known address of each Class Member by first-class mail postage prepaid.

**13.4.** Any Class Member may request exclusion from the Class for purposes of recovering monetary relief as described in Section X. Any Class Member who wishes to opt-out of the Consent Decree for purposes of recovering monetary relief must submit a written and

33

signed Request for Opt-out Statement to the Settlement Administrator (Exhibit C). Request for Opt-out Statements must be received by the Settlement Administrator by September 17, 2007. Any risk of non-receipt by September 17, 2007 is on the Class Member.

**13.5.**  No Class Member may opt out of the programmatic relief provisions in Section IX of this Consent Decree.

## XIV.  FAIRNESS HEARING AND FINAL NOTICE

**14.1.**  Class Counsel shall file the date-stamped originals for any opt-out statement with the Court by September 24, 2007.

**14.2.**  Class Members who have timely and properly requested exclusion from the Class may not participate at the Fairness Hearing.

**14.3.**  Settlement Class Members who wish to object to this Consent Decree or any part of it may be heard at the Fairness Hearing only:

(a)  if they file with this Court and serve on Counsel of Record a written statement of their objections;

(b)  where such statement is received by the Court and Counsel of Record on or before September 24, 2007;

(c)  where such statement indicates whether they intend to appear at the Fairness Hearing; and,

(d)  if they contemporaneously notify the Court and Counsel of Record of their intention to appear at the Fairness Hearing.

Any risk of non-receipt by this day is on the Class Member. Such objectors may appear at the Fairness Hearing either in person or by counsel. Failure to perform any of these requirements shall be deemed a waiver of any objections. The Parties may, but need not, respond in writing to objections by filing a response with the Court.

**14.4.**  If the Court approves the Consent Decree at the Fairness Hearing, the Settlement Administrator shall mail the Notice of Final Approval of Consent Decree within ten (10)

34

business days of the conclusion of the Fairness Hearing to each Class Member who did not opt out of the class.

## XV.   EXCESSIVE NUMBER OF OPT-OUTS

Nike shall have the unilateral right to revoke the Consent Decree prior to the Final Approval  Date in the event that ten percent (10%) or more of Class Members opt-out of the Consent Decree.

## XVI.   ENFORCEMENT PROCEDURE

**16.1.   Resolution Of Parties' Disputes.**  In the event that Class Counsel, the Diversity Consultant, or any Party to this Consent Decree believes that a Party has failed to comply with any material provision of this Consent Decree, he, she, or it shall first attempt to resolve the issue by good faith negotiations.  To that end, he, she, or it shall immediately, and no later than three (3) business days after becoming aware of the issue, notify the other party in writing via e-mail and first class mail of the particulars of the dispute, the term or terms of the Consent Decree that are involved, and a suggested resolution of the problem.  The recipient of the written communication must respond in writing to the sender within ten (10) business days with an explanation of its response to the proposed solution.  If such correspondence does not resolve the dispute between the Parties, then the Parties shall meet on at least one (1) occasion within the next ten (10) business days and attempt to resolve the dispute in good faith.

**16.2.   Court Intervention.**  After complying with Paragraph 16.1 above, if the Parties are unable to resolve their dispute, then the Parties may seek Court intervention.  The moving papers shall explain the facts and circumstances that allegedly necessitate immediate action by the Court.  If any such matter is brought before the Court requesting immediate Court action, the opposing party shall be provided with appropriate actual notice, and an opportunity to be heard in opposition to the motion, pursuant to the Local Rules of the Court and the Federal Rules of

Civil Procedure. The Court in its discretion may set such procedures for emergency consideration as are appropriate to the particular facts and circumstances, but no such matter may be conducted on an *ex parte* basis.

**16.3. No Third-Party Rights.** Nothing in this Consent Decree shall be deemed to create any rights on the part of any third party beneficiaries to enforce this Consent Decree. The right to seek enforcement of this Consent Decree is vested exclusively in the Parties. In the event that a third-party challenges this Consent Decree or brings a lawsuit or files an administrative charge with a governmental agency, such as the U.S. Equal Employment Opportunity Commission or a similar state or local agency, against Nike for liability resulting from any actions required by this Consent Decree, Class Counsel agrees that it will send a letter to and/or file a motion with the agency with which the charge was filed and/or judge assigned to the lawsuit which was filed, stating that Class Counsel believe the Consent Decree is valid, that the Consent Decree should be given full force and effect, that any actions taken by Nike as required by the Consent Decree are in compliance with all applicable laws, and that Nike should be absolved from liability for any actions required by this Consent Decree. Class Counsel will provide a copy of its letter and/or motion to Nike at the time of its mailing to and/or filing with the applicable court or governmental agency.

**16.4. Status of Allegedly Injured Individuals.** For purposes of interpreting this Consent Decree, allegedly injured individuals who are not Class Members shall not be deemed to be third-party beneficiaries of this Consent Decree and shall have no right to enforce its terms.

**16.5. No Individual or Independent Right to Seek Enforcement.** Nothing in this Consent Decree is intended to confer upon any person or entity other than the Plaintiff Class as a whole and by Class Counsel, and Nike the right to seek enforcement of its terms.

36

## XVII. CONSTRUCTION

**17.1.  Governing Law.**  This Consent Decree  shall be construed and interpreted in accordance with and governed by the laws of the State of Illinois.

**17.2.  Entire Agreement.**  This Consent Decree, including Exhibits, comprises the full and exclusive agreement and understanding of the Parties with respect to this Settlement, and supersedes all prior written or oral agreements (including, without limitation, any and all term sheets previously agreed to by the Parties).  No representations or inducements to compromise this action have been made, other than those recited in this Decree.  This Decree does not impose any obligations on the parties beyond the terms and conditions stated herein.  Accordingly, this Decree shall not prevent or preclude Nike from revising its employment practices and policies or taking other personnel actions during the term of the Decree that do not violate the requirements of the Decree.

**17.3.  Severability.**  Subject to and independent from Paragraph 4.6 herein, if any clause, sentence, paragraph, or part of this Consent Decree or the application of it to any person or circumstances, is, for any reason, judged by the Court to be totally or partially unenforceable or contrary to law or if the enactment or amendment of any federal or state statute, order, ordinance, regulation renders any provision of this Consent Decree totally or partially unenforceable or contrary to law, such ruling, judgment, enactment, or amendment shall not effect, impair, or invalidate the remainder of this Consent Decree, except as otherwise provided herein.

**17.4.  Joint Document Of The Parties.**  The terms of this Consent Decree are the product of joint negotiation and are not to be construed as having been authored by one Party or another.

CIII 11276620.1

**17.5. Agreed Modifications.** Should either Named Plaintiffs or Nike determine that modifications, additions, or deletions to this Consent Decree are necessary, the counsel for the Parties shall meet in good faith and on reasonable notice to discuss any such changes. No modification, deletion, or addition to this Consent Decree shall be adopted unless it is agreed upon in writing, signed by the Parties, and so ordered by the Court.

**17.6. Headings.** The headings in this Consent Decree are for the convenience of the Parties only and shall not limit, expand, modify, amplify, or aid in the interpretation or construction of this Consent Decree.

**17.7. Non-Waiver.** The waiver in any one instance by any Party hereto of any term, condition, or covenant in this Consent Decree or of the breach of any term, condition, covenant, or representation herein shall not operate as or be deemed to be a waiver of the right to enforce any other term, condition, or representation, nor shall any failure by any Party at any time to enforce or require performance of any provision hereof operate as a waiver of or affect in any manner such Party's right at a later time to enforce or require performance of such provisions or of any other provision hereof.

**17.8. Calculation Of Time.** In computing any period of time prescribed or allowed by this Consent Decree, unless otherwise stated, such computation or calculation shall be made consistent with the Federal Rules of Civil Procedure.

**17.9. Notice To The Parties.** All notices and other communications required under this Consent Decree shall be in writing and delivered either personally or by depositing the same, postage prepaid, in the United States Mail, addressed to the party hereto to whom the same is directed at the following addresses:

38

| **To Plaintiffs:** | **To Nike:** |
|---|---|
| Ines Monte | Brenda H. Feis |
| BRENNAN & MONTE LTD. | SEYFARTH SHAW LLP |
| 20 S. Clark Street, Suite 1530 | 131 S. Dearborn Street, Suite 2400 |
| Chicago, IL | Chicago, Illinois 60603 |
| (312) 422-0001 | (312) 460-5000 |
| (312) 422-0008 (facsimile) | (312) 460-7000 (facsimile) |

The Parties or their counsel may from time to time change their addresses or representatives for purposes of this Section by providing written notice, return receipt requested, of such changes to the other Party.

**17.10. Counterparts.** This Consent Decree may be executed in one or more counterparts and each executed copy shall be deemed an original, which shall be binding upon all Parties hereto.

## XVIII. PUBLICITY

**18.1. General.** The Parties and their counsel have entered into this Consent Decree with the hope and expectation that Nike, NTC and its current and future African-American employees will enjoy, for many years to come, a strong and mutually beneficial relationship.

**18.2. Publicity.** The Named Plaintiffs, Class Counsel and Nike shall agree to a media statement ("Public Statement"), attached hereto as Exhibit F, to be issued jointly upon the filing of the motion to approve the settlement and on the day after the Court's preliminary approval of the settlement. Furthermore, the Named Plaintiffs, Class Counsel (on behalf of the Class) and Nike agree that all communications with the media and any other non-parties to the litigation regarding the case will be limited to the Public Statement. Nike, Class Counsel (on behalf of the Class) and the Named Plaintiffs agree that each will not engage in any unauthorized publicity regarding the case, and that neither Nike, Class Counsel nor Named Plaintiffs, nor any of their agents, will take any steps to encourage any Class Members or any other third parties from

39

engaging in unauthorized publicity regarding the case. To the extent that any unauthorized publicity occurs that is not approved by Nike, Class Counsel and the Named Plaintiffs, each will retain the right to respond. The Parties further agree that Nike, Class Counsel (on behalf of the Class) and the Named Plaintiffs shall refrain from disparaging each other, and that neither Nike, Class Counsel nor Named Plaintiffs, nor any of their agents, will take any steps to encourage any Class Members or other third parties to engage in disparaging remarks or comments about Class Counsel, the Named Plaintiffs, Nike or NTC. Class Counsel and the Named Plaintiffs further agree to inform any inquiring Class Member that the terms of the Settlement include provisions that prohibit the Settlement Class Members from disparaging Nike or NTC and from discussing publicly the case beyond the parameters of the Public Statement. Nothing in this agreement shall restrict Nike's right to communicate about the terms of this consent decree with its employees and community stakeholders for the purpose of enforcing the terms of the consent decree.

Class Counsel agrees that, within two (2) business days of the Court's Preliminary Approval of the Consent Decree, they will modify any web site and/or any other publicly-available postings to add only documents and instructions related to the Consent Decree and the Exhibits attached thereto.

**18.3. Breach of Publicity Promise.** The Parties acknowledge that their mutual commitment to limit communications and publicity regarding this case is an essential condition to this agreement. Accordingly, if any Settlement Class Member, Named Plaintiffs, Class Counsel, or Nike engages in any communications with the media or any other non-parties to the litigation regarding the case, other than through the Public Statement authorized herein, Settlement Class Member, Named Plaintiffs, Class Counsel or Nike will retain all rights to pursue its enforcement remedies pursuant to Section XVI.

40

## XIX. VOLUNTARY DISMISSAL WITH PREJUDICE

The Parties agree that the Complaint shall be dismissed with prejudice upon the Court's

Final Approval and entry of this Consent Decree.

SO ORDERED, ADJUDGED AND DECREED, this 2nd day of October, 2007.

Milton I. Shadur
United States District Court Judge

Agreed to in form:

FOR THE PLAINTIFFS & PLAINTIFF
CLASSES:

By:/s Ines Monte
Ines Monte
BRENNAN & MONTE LTD.
20 S. Clark Street, Suite 1530
Chicago, IL
(312) 422-0001
(312) 422-0008 (facsimile)

Agreed to in form:

FOR THE DEFENDANT:

**NIKE RETAIL SERVICES, INC.**

By:/s Brenda H. Feis
Brenda H. Feis
SEYFARTH SHAW LLP
131 S. Dearborn Street, Suite 2400
Chicago, Illinois 60603
(312) 460-5000
(312) 460-7000 (facsimile)

Dated: October 2, 2007_____ ___ ___ ___

Dated: October 2, 2007

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KEITH SMITH, RIA MCDOUGAL, JOHN LEWIS, VERNETTA DUCKWORTH, JANISE PAGE, JACQUES WALKER, SHU-RA ROGERS, TODD LINDBERG, ANTHONY BROWN, JASON READUS, DWIGHT BROWN, ROBERT JACKSON, BILLY BROWN, CRYSTAL BARBEE, MARQUISHA HUDSON, ANTHONY BARLOW, LARRY POSEY, DAJAUNA YOUNG, on behalf of themselves and a class of similarly situated African American employees, | ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 03 C 9110<br><br>Judge Shadur<br><br>Magistrate Judge Denlow |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | |
| NIKE RETAIL SERVICES, INC., | ) ) | |
| Defendant. | ) | |

## PRELIMINARY APPROVAL ORDER

WHEREAS the parties to the above-captioned action have jointly moved the Court for certification of a settlement class pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, and for preliminary approval of a Consent Decree pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, and for permission to disseminate Preliminary Notice to absent Class Members of the Consent Decree, and good cause having been shown,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED AS FOLLOWS:

1. All terms used herein shall have the same meaning as defined in the Consent Decree.

2. This Court has jurisdiction over the subject matter of this Litigation and over all parties to this Litigation, including all Settlement Class Members.

**EXHIBIT A**

3.    Pursuant to this Court's March 22, 2006 order, the Court has certified the following classes:

•    **Hostile Work Environment Class:** All African-American employees and managers who are or were employed at Niketown Chicago at any time between December 17, 1999 and the present who allegedly were subjected to a hostile working environment.

•    **Job Segregation/Wage Disparity Class:** All current and former non-managerial African-American employees at Niketown Chicago who allegedly were assigned to lower paid positions in the stockroom or as cashiers because of their race during the period between December 17, 1999 and the present.

•    **Promotion Class:** All current and former non-managerial African-American employees at Niketown Chicago who allegedly were denied promotions or deprived of the ability to pursue promotions because of their race during the period between December 17, 1999 and the present.

•    **Discipline Class:** All current and former non-managerial African-American employees at Niketown Chicago who allegedly were subjected to racially-biased application of workplace rules and regulations that resulted in discipline up to and including termination, during the period between December 17, 1999 and the present.

•    **Benefits Class:** All current and former non-managerial African-American employees at Niketown Chicago who allegedly applied for, requested and/or were entitled to benefits but were denied those benefits because of their race, during the period between December 17, 1999 and the present.

4.    Pursuant to Fed. R. Civ. P. 23(e), this Court hereby finds that the Consent Decree is within the appropriate range of fairness, reasonableness and adequacy and hereby preliminarily approves the Consent Decree.

5.    The Parties are directed immediately to disseminate Preliminary Notice in the form of Preliminary Notice attached as Exhibit B to the Consent Decree.

6.    Any Class Member who wishes to Opt-Out of the Class must complete a written Request for Opt-Out Statement that is received by September 17, 2007, according to the procedures set forth in Exhibit C to the Consent Decree.

7.    Any Class Member who intends to object to the Consent Decree or to appear by his or her own counsel or on his or her own behalf must notify the Court and the parties of that

**EXHIBIT A**

2

intention in the manner and within the time set forth in the Preliminary Notice attached as Exhibit B to the Consent Decree.

8.     The Court finds that the Consent Decree has been reached as a result of intensive, serious, and non-collusive arms-length negotiations. The Court finds that counsel for the Parties are able to reasonably evaluate their respective positions. The Court also finds that settlement at this time will avoid additional substantial costs, as well as avoid the delay and risks that would be presented by the further prosecution of the claims covered by the Consent Decree. The Court has reviewed the relief granted as part of the Consent Decree and recognizes the significant value to the Settlement Class of both the injunctive and the monetary relief.

9.     As of the Effective Date, each and every released claim of each and every Settlement Class Member who has not timely opted-out is and shall be deemed to be conclusively released as against Nike. All Settlement Class Members as of the Effective Date are hereby forever barred and enjoined from prosecuting the released claims against Nike.

10.     The Court will hold a hearing on the fairness and adequacy of the Consent Decree on October 2, 2007, at 9:30 a.m. for purposes of determining whether to give final approval to the settlement under Rule 23(e).

SO ORDERED:

_____

Milton I. Shadur

United States District Judge

Dated: _____, 2007

**EXHIBIT A**

3

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| KEITH SMITH, RIA MCDOUGAL, JOHN LEWIS, VERNETTA DUCKWORTH, JANISE PAGE, JACQUES WALKER, SHU-RA ROGERS, TODD LINDBERG, ANTHONY BROWN, JASON READUS, DWIGHT BROWN, ROBERT JACKSON, BILLY BROWN, CRYSTAL BARBEE, MARQUISHA HUDSON, ANTHONY BARLOW, LARRY POSEY, DAJAUNA YOUNG, on behalf of themselves and a class of similarly situated African American employees, | ) ) ) ) ) ) ) ) ) ) ) ) | No. 03 C 9110 <br><br> Judge Shadur <br><br> Magistrate Judge Denlow |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| NIKE RETAIL SERVICES, INC., | ) ) ) | |
| Defendant. | ) | |

## PRELIMINARY NOTICE

1.    **The Claims.** In *Smith, et al., v. Nike Retail Services, Inc.*, 03 C 9110 (the "Litigation"), the Named Plaintiffs, on behalf of a class of African American employees, brought suit alleging, among other things, that Nike violated the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981") and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), by discriminating against and creating a hostile work environment for African-American employees at the Niketown Chicago store since December 17, 1999.

2.    **No Admission of Liability.** Nike denied, and continues to deny, all allegations of wrongdoing and liability in the Litigation. More particularly, Nike categorically denies that it discriminated against employees on the basis of their race, harassed African-American

**EXHIBIT B**

employees, created a hostile work environment, or has condoned any such conduct. Contrary to the allegations in the Litigation, Nike also denies that any company-wide pattern or practice of race discrimination or harassment exists or ever existed at NTC.

3.  **The Affected Classes.** On March 22, 2006, the District Court granted class certification of Plaintiffs' claims. Specifically, the Court certified the following classes (collectively, the "Class") for purposes of liability, monetary and injunctive relief:

•   **Hostile Work Environment Class:** All African-American employees and managers who are or were employed at Niketown Chicago at any time between December 17, 1999 and the present who allegedly were subjected to a hostile working environment.

•   **Job Segregation/Wage Disparity Class:** All current and former non-managerial African-American employees at Niketown Chicago who allegedly were assigned to lower paid positions in the stockroom or as cashiers because of their race during the period between December 17, 1999 and the present.

•   **Promotion Class:** All current and former non-managerial African-American employees at Niketown Chicago who allegedly were denied promotions or deprived of the ability to pursue promotions because of their race during the period between December 17, 1999 and the present.

•   **Discipline Class:** All current and former non-managerial African-American employees at Niketown Chicago who allegedly were subjected to racially-biased application of workplace rules and regulations that resulted in discipline up to and including termination, during the period between December 17, 1999 and the present.

•   **Benefits Class:** All current and former non-managerial African-American employees at Niketown Chicago who allegedly applied for, requested and/or were entitled to benefits but were denied those benefits because of their race, during the period between December 17, 1999 and the present.

•   The parties in the above lawsuit (the "Litigation") have decided to enter into a settlement.

The Settlement is not yet final and binding.

•   You should carefully read this Preliminary Notice which contains the terms of the Settlement because it applies to you.

**EXHIBIT B**

2

4. **Settlement Fund.** In order to avoid the expense and uncertainty of continued litigation, and as a result of having engaged in extensive arms-length negotiations, the Parties have determined that it would be in their best interests to finally resolve all matters by entry of this Consent Decree. Nike will establish a settlement fund totaling Seven Million Six Hundred Thousand Dollars ($7,600,000.00) for the payment of all monies in connection with: (1) the resolution of the race discrimination and race-based harassment claims asserted in this matter; (2) this Decree (and attachments); and (3) the dismissal of the Complaint filed in this Action. This sum is inclusive of payment for: (1) all awards to and on behalf of the Class Members and Named Plaintiffs; (2) attorneys' fees and expenses of the Classes and Named Plaintiffs; (3) all costs of notice and settlement administration; (4) all taxes imposed on the Settlement Fund subsequent to the date of its creation and all expenses related to those taxes; and, (5) all taxes required to be withheld and paid over to the appropriate taxing authorities with respect to payments made by the Fund. The Settlement Fund will consist of three portions: one Class Claim Portions in the amount of $5,000,000.00 (to be divided as follows: $2,500,000.00 for the Hostile Environment Class; $400,000.00 for the Promotion Class; $730,000.00 for the Job Segregation Class; $600,000.00 for the Discipline Class; $300,000.00 for the Benefits Class and $470,000.00 for the Named Plaintiff Incentive Awards Portion to be divided among the 18 Named Plaintiffs); one Legal Fees and Costs Portion in the amount of $2,600,000.00; and one Interest Earnings Portion to be used for any taxes imposed on the Settlement Fund subsequent to the date of its creation by Nike's transfer of the Settlement Fund to the Seaway National Bank of Chicago and for administrative expenses related to the distribution of the Settlement Fund to Settlement Class Members. Applicants for awards from the Class Claims Portion shall together

**EXHIBIT B**

3

be referred to as "Claimants," and recipients of awards from the Class Claims Portion shall together be referred to as the "Eligible Claimants."

5. **Claims Filing Procedures for Settlement of Claims of Class Members and Named Plaintiffs.** Class Members shall be entitled to submit their claims to the Settlement Administrator, under penalty of perjury, in accordance with the procedures set forth in the Consent Decree and the Claim Form. In order to receive an award from the Class Claims Portion of the Settlement Fund, a Class Member must submit a Claim Form that is received by the Settlement Administrator by December 3, 2007. Any risk of non-receipt of the Claim Form by December 3, 2007 is on the Class Member. Claim Forms received by the Settlement Administrator after that date shall not be eligible for monetary awards, unless the Court determines that the reason for a late submission constitutes excusable neglect. The Settlement Administrator shall forward all Claim Forms to the Claim Reviewer. The Claim Reviewer shall review and evaluate all Claim Forms and recommend monetary awards from the Class Claims Portions of the Settlement Fund to the Court under seal by January 31, 2008.

6. **Distribution Formula**. Pursuant to a point formula recommended by Class Counsel and approved by the Court, and in an effort to promote both fairness and efficiency, each Claim Form will be awarded points after review and after any necessary verification. The Claim Reviewer may in his/her discretion verify certain information provided on the Claim Form with information provided by Nike through the Preliminary Approval date. The details of the point system to be applied are subject to Court approval on recommendation by Class Counsel. All monetary awards shall be subject to the review and approval of the Court before disbursement. All Class Members receiving awards will be required to keep the amount of the awards confidential from everyone except Class Counsel, or any attorney, tax or financial adviser

**EXHIBIT B**
4

representing them or their spouse, life partner or members of their immediate family. If any Class Member who receives a monetary award pursuant to this settlement breaches the confidentiality obligations described herein, Nike will retain all rights to pursue its enforcement remedies consistent with the consent decree. The point system shall be applied uniformly, will not be discretionary after Court approval and may be amended only by Court Order. The distribution formula will take into account several factors including: length of service; dates of service; job classification; job assignment; complaints made by the Claimant to Nike regarding discrimination; whether the Claimant received benefits; whether the Claimant was subject to discipline; the Claimant's promotional opportunities; the Claimant's contributions to case prosecution; the Claimant's anecdotal evidence of race-based discrimination and/or race-based harassment; and overall strength of the claim. Nike shall have no duty or obligation to produce additional documents, data or other information. The total points awarded to all Claimants will be aggregated, and each Claimant's proportionate share of the total points will be determined. The Claimants shall then be allocated a commensurate proportion of the applicable Class Claims Portion.

7. **Equitable Relief.** In addition to the foregoing monetary relief, Nike has agreed to equitable relief including: a Court appointed Diversity Consultant to monitor and periodically report to the Court regarding Niketown Chicago's compliance with the Consent Decree; appointment of a Compliance Officer at Nike's World Headquarters; designation of an Ombudsperson at Niketown Chicago; diversity training of all supervisors and managers at Niketown Chicago; the creation of store-wide objectives at Niketown Chicago focused on providing equal employment opportunities for all employees in non-managerial sales positions without regard to race; creation or continuation of a formal mentoring program for its non-

**EXHIBIT B**

5

managerial Niketown Chicago African-American employees; the review and revision of Niketown Chicago's applicable human resources practices; and the review and revision of Niketown Chicago's applicable loss prevention practices to eliminate any disparate treatment of African-American employees and customers.

8. **Objection to the Settlement.** If you wish to object to any portion of or the entire Settlement, other than the non-monetary equitable relief, then your written objections must be received by the United States District Court for the Northern District of Illinois, located at 219 S. Dearborn St., Chicago, IL 60604, on or before September 24, 2007. Your written objections must also be received by counsel of record on or before September 24, 2007 at the following addresses:

| **To Plaintiffs:** | **To Nike:** |
|---|---|
| Ines Monte<br>BRENNAN & MONTE LTD.<br>20 S. Clark Street, Suite 1530<br>Chicago, IL<br>(312) 422-0001<br>(312) 422-0008 (facsimile) | Brenda H. Feis<br>SEYFARTH SHAW LLP<br>131 S. Dearborn Street, Suite 2400<br>Chicago, Illinois 60603<br>(312) 460-5000<br>(312) 460-7000 (facsimile) |

**EXHIBIT B**

6

The objections must be in writing, must include the reason for your objection(s), and must indicate whether you intend to testify at a hearing concerning the Settlement on October 2, 2007 at 9:30 a.m. located at Room 2303, 219 S. Dearborn St., Chicago, IL 60604. If you fail to present your objections in writing as discussed in this paragraph, you will be deemed to have waived those objections. Any risk of non-receipt of your objection by September 24, 2007 is on the objecting Class Member.

9.    **Important – Opt-Out Option.** Because you have received this Preliminary Notice and have the opportunity to participate in the Claims Process, if the Consent Decree and Settlement Agreement are accepted by the Court, you will be deemed to have waived and released any claim for individual or class-based race discrimination or race-based harassment (and any damages or other relief) you may be able to assert against Nike. **If you do not want to be considered a Settlement Class Member for whatever reason**, you must complete the attached "Request for Opt-Out Statement" and it must be received by the Settlement Administrator by September 17, 2007 at:

> Settlement Administrator
> c/o First Class, Inc. J8814
> 5410 W. Roosevelt Road-Unit 222
> Chicago, IL 60644-1478

Any risk of non-receipt of your Request for Opt Out Statement by September 17, 2007 is on the Class Member.

10.    To obtain more information you may visit the website www.NikeDiscrimination.com where you will find the proposed Consent Decree, the Court's Order certifying the classes, the Complaint that Plaintiffs submitted, the Defendant's Answer to the Complaint and other relevant

**EXHIBIT B**
7

information. You may also call or write to Class Counsel with any questions regarding this class

action. The contact information for Class Counsel is:

Noelle Brennan, Esq
Ines Monte, Esq.
Brennan & Monte, Ltd.
20 S. Clark Street
Suite 1530
Chicago, Illinois 60603
(312) 422-0001 (TEL)

Randall D. Schmidt, Esq.
Edwin F. Mandel Legal Aid Clinic
The University of Chicago Law School
6020 S. University Ave.
Chicago, Illinois 60637
(773) 702-9611 (TEL)
(800) 756-4487 (Toll Free)

## PLEASE DO NOT TELEPHONE THE CLERK OF THE COURT.

**Dated: July 30, 2007**

**CLERK, U.S. District Court**
**Northern District of Illinois**

**EXHIBIT B**
8

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| KEITH SMITH, RIA MCDOUGAL, JOHN LEWIS, VERNETTA DUCKWORTH, JANISE PAGE, JACQUES WALKER, SHU-RA ROGERS, TODD LINDBERG, ANTHONY BROWN, JASON READUS, DWIGHT BROWN, ROBERT JACKSON, BILLY BROWN, CRYSTAL BARBEE, MARKESHA HUDSON, ANTHONY BARLOW, LARRY POSEY, DAJAUNA YOUNG, on behalf of themselves and a class of similarly situated African American employees, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )<br>) |
| NIKE RETAIL SERVICES, INC., | )<br>)<br>) |
| Defendant. | ) |

No. 03 C 9110

Judge Shadur

Magistrate Judge Denlow

## REQUEST FOR OPT-OUT STATEMENT

If you do not wish to participate in the Claims Process described in the Consent Decree, then you must sign and send this form to:

Settlement Administrator
c/o First Class, Inc. J8814
5410 W. Roosevelt Road-Unit 222
Chicago, IL 60644-1478

The Settlement Administrator must receive your Request for Opt-Out Statement no later than September 17, 2007. If the Settlement Administrator receives your Request for Opt-Out Statement after September 17, 2007, your Request For Opt-Out Statement will not be considered and you will be bound by the terms of the Consent Decree. Any risk of non-receipt of your Request for Opt-Out Statement by September 17, 2007 is on the Class Member.

If you decide to exclude yourself from the Consent Decree, then:

- you will not be eligible to participate in the Claims Process;

## EXHIBIT C

- you will not be permitted to object to this Consent Decree or otherwise participate in any further proceedings in the Litigation;

- except as set forth in the Consent Decree, the law firm of Brennan & Monte, Ltd. and Randall Schmidt of the Edwin F. Mandel Legal Aid Clinic of the University of Chicago Law School, will no longer represent you or be your attorneys;

- you may pursue any of your own individual claims and relief, including monetary damages, against Nike.

If you decide **not** to exclude yourself from the Consent Decree, then you will be bound by the Consent Decree. This means that, except as set forth in the Consent Decree, you will waive and release all of your individual claims, damages, and other relief which you may be able to assert against Nike. You will be entitled only to the relief described in the Consent Decree.

## REQUEST FOR OPT-OUT STATEMENT

I wish to Opt-Out of the Claims Process of the Litigation. I understand that by requesting to be excluded from the Claims Process, I will not be eligible to participate in the Claims Process in accordance with the Consent Decree entered into by Nike. I understand that if I am excluded from the Claims Process, I may bring a separate action seeking damages. I understand that in any separate lawsuit, I may receive nothing or less than I would have received if I had filed a Claim under the Claims Process outlined in the Consent Decree. I also understand that I may not seek exclusion from the Class for non-monetary relief, and that I will be bound by the equitable relief provisions of the Consent Decree entered into by Nike if the Consent Decree is approved by the Court.

By signing below, I acknowledge that I have read and understood all of the above language. I am signing this form voluntarily and knowingly.

_____

Print Name

_____

Signature

_____

Date

**EXHIBIT C**

2

## NOTICE OF FINAL APPROVAL OF CONSENT DECREE

### *Smith, et al., v. Nike Retail Services, Inc.*

## PLEASE READ THIS NOTICE AS IT MAY AFFECT YOUR LEGAL RIGHTS

The purpose of this final notice is to inform you that United States District Court Judge Milton I. Shadur has granted final approval of the Consent Decree in the civil action captioned *Smith, et al., v. Nike Retail Services, Inc.*, 03 C 9110 (the "Litigation").

**The Claims.** In *Smith, et al., v. Nike Retail Services, Inc.*, 03 C 9110 (the "Litigation"), the Named Plaintiffs, on behalf of a class of African-American employees, brought suit alleging, among other things, that Nike violated the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981") and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), by discriminating against and creating a hostile work environment for African-American employees at the Niketown Chicago ("NTC") store since December 17, 1999.

**No Admission of Liability.** Nike denied, and continues to deny, all allegations of wrongdoing and liability in the Litigation. More particularly, Nike categorically denies that it discriminated against employees on the basis of their race, harassed African American employees, created a hostile work environment, or has condoned any such conduct. Contrary to the allegations in the Litigation, Nike also denies that any company-wide pattern or practice of race discrimination or harassment exists or ever existed at NTC.

**The Affected Classes.** On March 22, 2006, the District Court granted class certification of Plaintiffs' claims. Specifically, the Court certified the following classes (collectively, the "Class") for purposes of liability, monetary and injunctive relief:

> **Hostile Work Environment Class:** All African-American employees and managers who are or were employed at Niketown Chicago at any time between December 17, 1999 and July 30, 3007 who allegedly were subjected to a hostile working environment.

> **Job Segregation/Wage Disparity Class:** All current and former non-managerial African-American employees at Niketown Chicago who allegedly were assigned to lower paid positions in the stockroom or as cashiers because of their race during the period between December 17, 1999 and July 30, 2007.

> **Promotion Class:** All current and former non-managerial African-American employees at Niketown Chicago who allegedly were denied promotions or deprived of the ability to pursue promotions because of their race during the period between December 17, 1999 and July 30, 2007.

> **Discipline Class:** All current and former non-managerial African-American employees at Niketown Chicago who allegedly were subjected to racially-biased application of workplace rules and regulations that resulted in discipline up to and including termination, during the period between December 17, 1999 and July 30, 2007.

## EXHIBIT D

**Benefits Class:** All current and former non-managerial African-American employees at Niketown Chicago who allegedly applied for, requested and/or were entitled to benefits but were denied those benefits because of their race, during the period between December 17, 1999 and July 30, 2007.

The parties in the above Litigation have decided to enter into a settlement. The Settlement was preliminarily approved on July 30, 2007. A Fairness Hearing was held on October 2, 2007 and the Court granted Final Approval of the Settlement on October 2, 2007.

**Settlement Fund.** In order to avoid the expense and uncertainty of continued litigation, and as a result of having engaged in extensive arms-length negotiations, the Parties have determined that it would be in their best interests to finally resolve all matters by entry of this Consent Decree. Nike will establish a settlement fund totaling Seven Million Six Hundred Thousand Dollars ($7,600,000.00) for the payment of all monies in connection with: (1) the resolution of the race discrimination and harassment claims asserted in this matter; (2) this Decree (and attachments); and (3) the dismissal of the Complaint filed in this Action. This sum is inclusive of payment for: (1) all awards to and on behalf of the Class Members and Named Plaintiffs; (2) attorneys' fees and expenses of the Classes and Named Plaintiffs; (3) all costs of notice and settlement administration; (4) all taxes imposed on the Settlement Fund subsequent to the date of its creation and all expenses related to those taxes; and, (5) all taxes required to be withheld and paid over to the appropriate taxing authorities with respect to payments made by the Fund. The Settlement Fund will consist of three portions: one Class Claims Portions in the amount of $5,000,000.00 (to be divided as follows: $2,500,000.00 for the Hostile Environment Class; $400,000.00 for the Promotion Class; $730,000.00 for the Job Segregation Class; $600,000.00 for the Discipline Class; $300,000.00 for the Benefits Class); and $470,000.00 for the Named Plaintiff Incentive Awards Portion to be divided among the 18 Named Plaintiffs); one Legal Fees and Costs Portion in the amount of $2,600,000.00; and one Interest Earnings Portion to be used for any taxes imposed on the Settlement Fund subsequent to the date of its creation by Nike's transfer of the Settlement Fund to the Seaway National Bank of Chicago and for administrative expenses related to the distribution of the Settlement Fund to Settlement Class Members. Applicants for awards for the Class Claim Portion shall together be referred to as "Claimants," and recipients of awards from the Class Claim Portion shall together be referred to as the "Eligible Claimants."

**Claims Filing Procedures for Settlement of Claims of Class Members and Named Plaintiffs.** Class Members shall be entitled to submit their claims to the Settlement Administrator, under penalty of perjury, in accordance with the procedures set forth in the Consent Decree and the Claim Form. In order to receive an award from the Class Claims Portion, a Class Member must submit a Claim Form that is received by the Settlement Administrator by December 3, 2007. Any risk of non-receipt of a Claim Form by December 3, 2007 is on the Class Member. Claim Forms received after that date shall not be eligible, unless the Court determines that the reason for a late submission constitutes excusable neglect. The Settlement Administrator shall forward all Claim Forms to the Claim Reviewer. The Claim Reviewer shall review and evaluate all Claim Forms and recommend monetary awards from the Class Claims Portion pursuant to the Distribution Formula that shall be recommended by Class Counsel and approved by the Court.

**EXHIBIT D**

2

**Distribution Formula**. Pursuant to a point formula recommended by Class Counsel and approved by the Court, and in an effort to promote both fairness and efficiency, each Claim Form will be awarded points after review and after any necessary verification. The Claim Reviewer may in his/her discretion verify certain information provided on the Claim Form with information provided by Nike through the Preliminary Approval date. The details of the point system to be applied are subject to Court approval on recommendation by Class Counsel. All monetary awards shall be subject to the review and approval of the Court before disbursement. All Class Members receiving awards will be required to keep the amount of the awards confidential from everyone except Class Counsel, or any attorney, tax or financial adviser representing them or their spouse, life partner or members of their immediate family. If any Class Member who receives a monetary award pursuant to this settlement breaches the confidentiality obligations described herein, Nike will retain all rights to pursue its enforcement remedies consistent with the consent decree. The point system shall be applied uniformly, will not be discretionary after approval and may be amended only by Court Order. The distribution formula will take into account several factors, including: length of service; dates of service; job classification; job assignment; complaints made to Nike regarding discrimination; whether individual received benefits; whether individual was subject to discipline; promotional opportunities; contributions to case prosecution, anecdotal evidence of race-based discrimination or race-based harassment, and overall strength of claim. Nike shall have no duty or obligation to produce additional documents, data or other information. The total points awarded to all Claimants will be aggregated, and each Claimant's proportionate share of the total points will be determined. The Claimants shall then be allocated a commensurate proportion of the Class Claims Portion.

**Equitable Relief.** In addition to the monetary relief, Nike has agreed to equitable relief including: a Court appointed Diversity Consultant to monitor and periodically report to the Court regarding Niketown Chicago's compliance with the Consent Decree; appointment of a Compliance Officer at Nike's World Headquarters; designation of an Ombudsperson at Niketown Chicago; diversity training of all supervisors and managers at Niketown Chicago; the creation of store-wide objectives at Niketown Chicago focused on providing equal employment opportunities for all employees in non-managerial sales positions without regard to race; creation or continuation of a formal mentoring program for its non-managerial Niketown Chicago African-American employees; the review and revision of Niketown Chicago's applicable human resources practices; and review and revision of Niketown Chicago's applicable loss prevention practices to eliminate any disparate treatment of African-American employees and customers.

**EXHIBIT D**

3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

KEITH SMITH, RIA MCDOUGAL, JOHN )
LEWIS, VERNETTA DUCKWORTH, )
JANISE PAGE, JACQUES WALKER, )
SHU-RA ROGERS, TODD LINDBERG, )
ANTHONY BROWN, JASON READUS, )
DWIGHT BROWN, ROBERT JACKSON, )
BILLY BROWN, CRYSTAL BARBEE, )    No. 03 CV 9110
MARKESHA HUDSON, ANTHONY )
BARLOW, LARRY POSEY, DAJAUNA )    Judge Milton I. Shadur
YOUNG, on behalf of themselves and a )
class of similarly situated African American )
employees, )
           )
        Plaintiffs, )
           )
v. )
           )
NIKE RETAIL SERVICES, INC., )
           )
        Defendant. )

## ORDER ON DISMISSAL

The Parties to this Litigation have agreed that this action should be finally resolved by

entry of a Settlement Agreement and Consent Decree ("Consent Decree"). The Consent Decree

shall not constitute, and is not, an adjudication and/or finding on the merits of the case. The

Consent Decree finally resolves all of the claims in the litigation now pending between the

Parties.

NOW THEREFORE, the Court having examined the terms and provisions of the Consent

Decree,

IT IS HEREBY ORDERED as follows:

1.     All terms used herein shall have the same meaning as defined in the Consent Decree.

## EXHIBIT E

2.     This Court has jurisdiction over the subject matter of this litigation and over all Parties to this litigation, including all Settlement Class Members.

3.     The Consent Decree in the above matter, a copy of which is attached hereto at Tab A, is reasonable and appropriate, is in the best interests of the Parties and the Class, and is in the interest of justice.

4.     The terms of the Consent Decree hereby are incorporated herein as if fully set forth herein.

5.     The Consent Decree and this Order shall remain in effect for a period of two (2) years from the Effective Date of the Consent Decree.

6.     Neither the Consent Decree nor this Order nor any communication or action by the Parties in connection with the settlement shall be deemed to constitute either an admission by Nike of any liability or wrongdoing or a finding by the Court as to the merits of any claim or defense asserted or that could have been asserted in this action.

7.     Neither the Consent Decree nor this Order nor any communication or action by the Parties in connection with the settlement shall be deemed to constitute an admission in any action or proceeding or offered or received in evidence in any action or proceeding of any fault, liability, violation of statute, or wrongdoing by any person or entity.

8.     By virtue and operation of the consideration contained in the Consent Decree, all Settlement Class Members are conclusively deemed to have fully, finally, and irrevocably waived, released, and discharged Nike from any and all claims as set forth and defined in Paragraph 4.2 of the Consent Decree. All Settlement Class Members shall be enjoined fully, finally, and irrevocably from commencing, prosecuting, or maintaining any race discrimination or harassment claim against Nike as set forth and defined in Paragraph 4.2 of the Consent

**EXHIBIT E**

2

Decree. Any such Settlement Class Member shall be further enjoined fully, finally, and irrevocably from commencing, prosecuting, or maintaining in any court or forum any claim or action, or other proceeding that challenges or seeks review of or relief from any order, judgment, act, decision, or ruling of the Court in connection with this action.

9. Within seventy-two (72) hours following Final Approval of this Decree, Nike shall pay by wire transfer to the Seaway National Bank of Chicago (pursuant to transfer instructions to be provided by Class Counsel after execution of this Decree by all Parties) the sum of Seven Million Six Hundred Thousand Dollars ($7,600,000.00) (the "Settlement Fund"). The Settlement Fund shall be an irrevocable trust under Illinois law and a Qualified Settlement Fund under Section 468B of the Internal Revenue Code.

10. Class Counsel's Unopposed Petition for Attorneys' Fees and Costs is granted in its entirety.

11. Pursuant to Paragraph 9.6 of the Consent Decree, the Court selects and appoints James E. Coleman, Jr., Professor of Law at Duke University School of law as the independent Diversity Consultant to be responsible for monitoring the Consent Decree.

12. This case is dismissed, with prejudice and without costs to the Parties, except as otherwise expressly provided for in this Order and the Consent Decree, including, but not limited to, this Court's retention of jurisdiction to administer, effectuate, and enforce the provisions of the Consent Decree.

**EXHIBIT E**

3

SO ORDERED:

_____

Milton I. Shadur

United States District Judge

Dated: October 2, 2007

**EXHIBIT E**

4

## EXHIBIT F

## JOINT PUBLICITY STATEMENT

Nike Retail Services, Inc. and Class Counsel representing approximately four hundred current and former African-American employees of Nike's Niketown Chicago store have reached a settlement resolving the ongoing race discrimination litigation, Smith et al. v. Nike Retail Services 03 C 9110. The class action was originally filed on December 17, 2003 alleging that Nike discriminated against and created a hostile work environment for African-American employees at its Niketown Chicago store. Judge Milton Shadur of the U.S. District Court for the Northern District of Illinois Eastern Division granted class certification on March 22, 2006 and appointed as Class Counsel the firm of Brennan & Monte, Ltd. and Randall Schmidt of the Edwin F. Mandel Legal Aid Clinic of the University of Chicago Law School. The Court certified a class that included all current and former African-American employees of Niketown Chicago from December 17, 1999 to July 30, 2007, along with four subclasses.

Nike denied and continues to deny all allegations of wrongdoing and liability in the litigation. In an effort to avoid continued and protracted litigation, the parties agreed to a settlement which was preliminarily approved by the Court on July 30, 2007. Under the terms of the proposed settlement and Consent Decree, Nike has agreed to pay $7.6 million to resolve the claims of class members. In addition to the monetary relief, Nike has agreed to affirmative relief including: a Court appointed Diversity Consultant to monitor and periodically report to the Court regarding Niketown Chicago's compliance with the Consent Decree; appointment of a Compliance Officer at Nike's World Headquarters; designation of an Ombudsperson at Niketown Chicago; diversity training of all supervisors and managers at Niketown Chicago; the creation of store-wide objectives focused on providing equal employment opportunities for all employees; creation of a

## EXHIBIT F

formal mentoring program for African-American employees; the review and revision of Niketown Chicago's human resources practices; and review and revision of Niketown Chicago's loss prevention practices to eliminate any disparate treatment of African-American employees and customers.

**EXHIBIT F**

2